# EXHIBIT A

**TYCKO & ZAVAREEI LLP**
Annick M. Persinger (CA Bar No. 272996)
1970 Broadway – Suite 1070
Oakland, CA 94612
Telephone: 510-254-6808
Facsimile: 202-973-0950
apersinger@tzlegal.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7000
yeremey@skclassactions.com

Neal J. Deckant (CA Bar No. 322946)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

[*Additional counsel on signature block*]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TEMPEST, LADIAMOND HARVEY, SARAH MCGREGOR HORNER, BRIONNA BROUHARD, KERRY MCCARTY, HILLARY BEAM, and CHRISTOPHER LUNDT, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> SAFEWAY INC., <br><br> Defendant. | Case No. 3:24-cv-06553-JSC <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> **(1) Violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500** *et seq.* <br> **(2) Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200** *et seq.* <br> **(3) Violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1760** *et seq.* <br> **(4) Breach of Contract** <br> **(5) Quasi-Contract/Unjust Enrichment** <br> **(6) Fraud** <br> **(7) Violation of Oregon Unlawful Trade Practices Act, O.R.S. 646.605** *et seq.* <br> **(8) Violation of District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901,** *et seq.* |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Michael Tempest, LaDiamond Harvey, Sarah McGregor Horner, Brionna Brouhard, Kerry McCarty, Hillary Beam, and Christopher Lundt, on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendant Safeway, Inc. ("Safeway") for violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, California False Advertising Law ("FAL"), Cal. Bus. § Prof. Code § 17500, California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, and Oregon Unlawful Trade Practices Act, O.R.S. 646.605 *et seq.,* as well as for breach of contract, quasi-contract/unjust enrichment, and fraud under Californian and Oregon. The following allegations are based on Plaintiffs' personal knowledge as to Plaintiffs' individual experiences, the investigation of counsel, and information and belief.

## INTRODUCTION

1. *In vino veritas*? Seemingly not—at least when Safeway is pricing the wine for sale to Safeway for U Rewards ("Safeway Rewards") members in its grocery stores. Safeway advertises a fake temporary sale on wine shelves in Safeway stores to induce customers to buy individual bottles of wine from Safeway.

2. Although Safeway falsely states on shelf flyers and on its website that its discounted price for a bottle of wine for U Rewards Members is "Thru" a certain date—suggesting that the sale price will only temporarily be available—Safeway's "Thru" dates are fabricated because there is actually no end to the sale.

3. As shown in the examples below, on store shelves below individual bottles of wine, Safeway includes a non-sale price stuck or fastened to the shelf (the reference price) above a temporary shelf flyer that includes a purported time-limited sale price for U Rewards Members on an individual bottle of wine "Thru" a certain date (the discount price).

2



4.      Although Safeway advertises a "Thru" date to motivate consumers to buy wine that they think is being sold at a time limited discount, at the end of each time-limited promotion, Safeway just renews the promotion to keep the Safeway Rewards member price at the purportedly temporary "discount" price. In short, while Safeway uses the idea that its sale is temporary and will end on a certain date by including "Thru" dates on shelf flyers and next to online offerings to induce more purchases, Safeway never actually ends the sale. As such, Safeway's "Thru" dates are made-up to manipulate more shoppers to decide to buy a bottle of wine from the shelf at Safeway stores.

5.      Safeway profits from its fraudulent advertising of temporary sales that are not in fact temporary at all by selling more wine than it would have absent the fake "Thru" date that suggests that the sale is temporary.

6.      To make matters worse, *both* Safeway's reference prices, which are affixed to the shelf,

3

*and* its discount prices, which are touted from the colorful flyer below, are marked up compared to the market price for the individual bottles of wine. In this scheme, Safeway intentionally inflates the reference price on the shelf and then sells individual bottles of wine for a purported discount that is not a discount at all as the "sale" prices are not actually discounted prices. Rather, even the "sale" prices are inflated prices above the market price for the wine bottles. As *both* the reference and discount prices are inflated for individual bottles of wine—despite robust advertising and labeling of purportedly time-limited sales of wine—none of the wine for "sale" at Safeway is actually on sale. Instead, Safeway's use of reference pricing is nothing more than a gimmick to make it appear that shoppers are getting a bargain, when they are not.

7.     California and Oregon law prohibit false reference pricing and fake time-limited sales. Plaintiffs are purchasers in each of these states who bought wine at Safeway based on their belief that they were buying wine at temporary sale price. If they had known that the price was a permanent price always available to members, and not a special temporary reduction of the regular price, they would not have purchased bottles of wine from Safeway. Accordingly, on behalf of themselves and others similarly situated, Plaintiffs seek damages, restitution, and injunctive relief that will finally put a stop to Safeway's deceptive marketing of wine in grocery stores across the country, including in California and Oregon.

## PARTIES

8.     Michael Tempest is a natural person and resident and citizen of Greenbrae, California.

9.     LaDiamond Harvey is a natural person and resident and citizen of San Francisco, California.

10.     Sarah McGregor Horner is a natural person and resident and citizen of Amity, Oregon.

11.     Brionna Brouhard is a natural person and resident and citizen of Portland, Oregon.

12.     Kerry McCarty is a natural person and resident and citizen of Bend, Oregon.

13.     Hillary Beam is a natural person and resident and citizen of Salem, Oregon.

14.     Christopher Lundt is a natural person and resident and citizen of the District of

4

Columbia.

15.     Safeway is a Delaware corporation with a principal address at 11555 Dublin Canyon Road, Pleasanton, CA 94588.

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the members of the putative Class exceed $5 million, exclusive of costs, and members of the proposed Class are citizens of a different state from Safeway.

17.     This Court has personal jurisdiction over Safeway because Safeway does regular business in this district, including operating numerous Safeway locations in this district. Safeway is also headquartered in this district and has a principal place of business in this district.

18.     Venue is proper in this District because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. *See* 28 U.S.C. §§ 1391(a)(1), (b)(1)-(2).

## FACTUAL ALLEGATIONS

### A.     Safeway's Rewards Program

19.     Safeway markets a free membership rewards program for customers, Safeway Rewards. The membership program is offered nationwide from Safeway's headquarters in Pleasanton, CA.

20.     Safeway claims that its Safeway Rewards members "enjoy exclusive access to offers on items & brands you love most," among other perks.

21.     Members are eligible to receive purported price discounts on products available for purchases in-store as long as they use their account number at checkout. According to Safeway, members can "save with digital-only coupons and personalized deals," and gain "access to the maximum level of savings" both in-store and online.

22.     The Safeway membership is not in any way "exclusive"—it can be and is typically

5

created instantly at checkout if a non-member happens to walk into a Safeway store. Indeed, virtually every sale made at a Safeway store is by a Safeway Rewards member and there are a reported 38 million members in Safeway's Rewards program. This is because Safeway makes it extremely easy to sign up, including at checkout, to obtain the "Member Price!" on items that is lower than a regular price at which it may in rare cases sell products to consumers who do not follow a few simple steps to become Safeway Rewards members.

23.     Given that the reference prices Safeway displays at the store are well above retail price for wine products, reasonable consumers sign up for the Safeway membership to avoid paying what are effectively penalty prices for not signing up for the membership.

24.     Instead of receiving genuine "sales" or "discounts," consumers with a Safeway membership buying wine products typically receive products that are still sold at inflated prices above market rates while at the same time purporting to be on sale temporarily for members.

**B.      Safeway sells wine to Safeway Rewards members at fabricated discounts that never end.**

25.      Forty states and the District of Columbia allow wine sales in grocery stores. As of 2020, grocery store wine sales were a $1.2 billion industry, with grocery stores placing their selections in "premium" locations and offering their own private label brands.[1] Wine is an attractive product for grocery store owners because of its relatively high retail margins and its ability to spur sales of other goods.[2]

26.     Many grocery stores advertise sales and discounts on wine, just like they offer sales and discounts on paper towels, rotisserie chickens, family size bags of chips, and Halloween candy on November 1.

27.     Especially where specific dates that the sale ends are provided in the advertising,

---

[1] Catherine Douglas Moran, *Bottoms Up: How grocers can keep alcohol sales pouring in*, Grocery Dive (Nov. 11, 2020), https://www.grocerydive.com/news/bottoms-up-how-grocers-can-keep-alcohol-sales-pouring-in/588755/.
[2] Mike Veseth, *Sizing Up Supermarket Wine*, The Wine Economist (May 9, 2011), https://wineeconomist.com/2011/05/09/sizing-up-supermarket-wine/.

consumers understand and reasonably expect that a sale or discount is just that—a time-limited offer to sell a particular product for a lower price than the retailer would ordinarily offer. During a sale, consumers understand and reasonably expect that they are saving money by purchasing the discounted product at a lower price than it would usually be sold.

28. Thus, when Safeway displays a supposed discount on the price of a bottle of wine, which are accompanied by the representation that the discount is a sale that will come to an end on a particular date, reasonable consumers understand and expect that they are saving money by taking advantage of a time limited offer that they might not be able to save if they came back at the end of stated end date of the sale. Stated otherwise, reasonable consumers understand and expect from Safeway's shelf flyers advertising a discount on a bottle of wine compared to a price on the shelf that, if they return to buy the products at a later date, the discount might no longer be available and they would be required to buy the product at a higher price.

29. Safeway deceives its customers by offering false discounts on its wine prices when, in fact, Safeway's sale prices are not temporary at all but are instead Safeway's price of the wine that is always available to every consumer as part of its free U Rewards program available at checkout. Safeway creates the illusion of a sale by advertising wine as ordinarily offered for sale at one price (the "reference price"), discounted down to a lower price for members (the "sale price").[3]

30. Safeway is, in fact, offering no discount to its U Rewards customers at all. Both the reference price *and* the supposedly temporarily discounted prices are above market rate for the wine bottles at issue. Thus, even the supposedly "discounted" temporary member price for individual bottles of wine is no discount or savings at all. Instead, Safeway's fraudulent use of reference prices and supposedly temporary discounted prices is a ploy to sell customers more bottles of wine and never provides any discount at all. .

---

[3] Examples of wines that Safeway always advertises as discounted from higher reference prices include, but are not limited to, Clos Du Bois Chardonnay, Joel Gott 815 Cabernet Sauvignon, Chateau St. Michelle Sauvignon Blanc, Josh Cellars Merlot, Decoy Cabernet Sauvignon, Menage a Trois Red Blend, La Marca Prosecco Sparkling Wine, Sutter Home blends, Chateau Ste. Michelle Cabernet Sauvignon, Carmenet Chardonnay, Ferrari-Carano Fume, and Wente Chardonnay, among others.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 3:24-cv-06553-JSC

**1.    Safeway's consistent false advertising of sales on individual bottles of wine**

31.    In its stores, Safeway prominently displays the reference price in black and white, with the sale price highlighted below in red and yellow with an end date for the supposed sale, to create the impression that the reference price is the usual price and the sale price is a special offer



*Wine for sale in a Safeway store*



*Wine for sale in a Safeway store*

32.    Below is a close-up exemplar of a typical discount label at Safeway:



33.    As can be seen, the discount labels always have a purported "end date."  In this example, the discount label would make a reasonable consumer that the sale would end on "Jan. 7," after which the price for the product would revert to the higher reference price.  The label states, "Thru Sun. Jan. 07."



SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 3:24-cv-06553-JSC

**2.** **Contrary to its advertising of a temporary discount price, Safeway never ends its "sale" and its discount prices are actually Safeway's ordinary prices—that are above market rate**

34. Contrary to its consistent advertising of a temporary discount price for U Rewards members, in reality, Safeway *never* sells its Rewards members wine at the reference prices. Thus, for Rewards members, the purportedly temporary "sale price" is not actually a "discount" from a higher price that members might pay—instead it is simply the ordinary price for wine sold at Safeway. In other words, Safeway Rewards members who purchase wine at Safeway for supposedly discounted prices are not actually buying wine at lower prices than ordinarily offered—as the wine is always offered at the discount price to all consumers (who can become members at check out for free).

35. To reasonable consumers, the end dates appearing on Safeway's discount labels mean that after the specified date, the products will no longer be on sale and will retail at their purported list prices. But immediately after each purportedly time-limited sale ends, Safeway generates another similar or identical discount with a new expiration date.

36. For example, the purported "sale" on Apothic Red Blend Wine advertised at $12.99 for Rewards members through July 11, 2024 did not end after July 11, 2024. Instead, as of September 2024, Safeway was still advertising Apothic Red Blend Wine for sale at $12.99. Since at least June 6, 2024, Safeway has never sold Apothic Red Blend Wine to its Rewards members for the reference price of $18.55 or any amount higher than $12.99.

37. Exacerbating the fraud that its prices are temporary sales, the supposed "sale" price offered by Safeway is significantly higher than the market price of most of the wines it sells. For example, on December 31, 2024, Safeway advertised a 750ml bottle of Meiomi Pinot Noir Red Wine for a "sale" price of $22.88, marked down from a "full" price of $36.99.[4] However, that same bottle of wine sold for a regular price of $16.97 at Total Wine & More, over 25% *less* than the advertised

---

[4] *Meiomi Pinot Noir Red Wine*, Safeway (last visited Dec. 31, 2024), https://www.safeway.com/shop/product-details.960107191.html.

"sale" price from Safeway.[5]  Similarly, this same bottle of wine was sold by Walmart for a regular price of $19.72, nearly 15% *less* than Safeway's advertised "sale" price.[6]  The same bottle of wine was also sold by Target for a sale price of $15.99, marked down from a regular price of $19.99.[7]  Even the regular price offered by Target is a 12% discount from Safeway's purported "sale" price.

38.     And Safeway's purported "sale" on Meiomi Pinot Noir Red Wine also did not end after April 23, 2024. Instead, as of September 2024, Safeway was still advertising that wine to Rewards members for $24.99, marked down from $36.99, and had not advertised it to Rewards members at the purported reference prices.

39.     During any 90-day period within the class period, Safeway did not once offer Joel Gott 815 Cabernet Sauvignon, Chateau St. Michelle Sauvignon Blanc, Josh Cellars Merlot, Decoy Cabernet Sauvignon, Menage a Trois Red Blend, La Marca Prosecco Sparkling Wine, Sutter Home wines, Chateau Ste. Michelle Cabernet Sauvignon, Carmenet Chardonnay, Ferrari-Carrano Fume, or Wente Chardonnay to Safeway Rewards members at the advertised reference prices.

40.     Safeway's fake wine sales are deceptive and misleading because they lead reasonable consumers to buy wine from Safeway based on their belief that they are saving money by buying wine at a lower price than it would usually be offered when that is not the case.

41.     Plaintiffs' and the class members' reasonable expectations were not met. Instead of receiving wine with a market value equal to the alleged reference prices, they received wine worth less. And instead of receiving a significant discount, Plaintiffs and the class members received little or no discount.[8]

---

[5]     *Meoimi Pinot Noir*, Total Wine & More (last visited Dec. 31, 2024), https://www.totalwine.com/wine/red-wine/pinot-noir/meiomi-pinot-noir/p/14738750.
[6]*Meiomi California Pinot Noir Red Wine*, Walmart (last visited Dec. 31, 2024), https://www.walmart.com/ip/Meiomi-California-Pinot-Noir-Red-Wine-750-ml-Bottle-13-5-ABV/185231322.
[7]*Meiomi Pinot Noir Red Wine*, Target (last visited Dec. 31, 2024), https://www.target.com/p/meiomi-pinot-noir-red-wine-750ml-bottle/-/A14777276#lnk=sametab.
[8]  In the normal course of business, Safeway keeps records of its reference prices, its supposedly time-limited sale prices, as well as the prices that Plaintiffs paid for individual bottles of wine at checkout as they are U Rewards Members.

42.     Thus, Safeway's advertisements harm consumers by inducing them to make purchases they would not otherwise have made, based on false information. And Safeway's advertisements artificially increase consumer demand for its wine. This puts upward pressure on the prices that Safeway can charge for wine. And as a result, Safeway can charge a price premium for wine that it would not be able to charge absent the misrepresentations described above. So due to Safeway's misrepresentations, Plaintiffs and the class members paid more for the products than they would have otherwise.

### 3.      Safeway's scheme is a recognized form of deception.

43.     Consumers are more likely to buy a product, and buy more of it, if they believe the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount. Consumers that are presented with discounts are substantially more likely to make a purchase. Almost two thirds of consumers have reported that a promotion or coupon "closes the deal, if they are wavering or are undecided on making a purchase."[9] And, two thirds of consumers "have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% of [consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[10]

44.     For these reasons, the Federal Trade Commission has described fictitious discounts like Safeway's as deceptive:

> Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being offered is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the reduced price is, in reality, probably just the seller's regular price.

---

[9] Khalid Saleh, *How Discounts Affect Online Consumer Buying Behavior*, The Invesp Blog (June 16, 2024), https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.
[10] *RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers*, PR Newswire (Apr. 25,. 2018), https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html.

Where Safeway's purported reduced prices are, in reality, just its regular price, the "bargain" being offered is false and misleading.

**C.    Safeway deceived Plaintiffs into buying wine with misleading discounts.**

**1.    Plaintiff Tempest**

45.    Plaintiff Tempest is a Safeway Rewards member. Within the applicable statute of limitations, and while he was a Safeway Rewards member, Mr. Tempest purchased wines including Chateau Ste. Michelle Cabernet Sauvignon, Carmenet Chardonnay, Ferrari-Carrano Fume, and Wente Chardonnay from a Safeway located in Marin County, California. The wine that Mr. Tempest purchased was advertised as marked down from a reference price, as a time-limited discount promotion for Safeway Rewards members. Before he purchased individual bottles of wine from Safeway stores, Mr. Tempest saw a higher price affixed to the store shelf with a bright flyer beneath that advertised a time-limited temporary sale price on individual bottles of wine that was several dollars less than affixed the shelf price. The examples shown in paragraphs 30-32 are substantially similar to the discounted prices that Mr. Tempest reviewed when deciding to buy wines, including individual bottles of Chateau Ste. Michelle Cabernet Sauvignon, Carmenet Chardonnay, Ferrari-Carrano Fume, and Wente Chardonnay.

46.    Based on Safeway's representations on it store shelves, Mr. Tempest believed that he was buying wine at a temporary discounted sale price and had therefore saved money on the purchase by making it during the time-period for the sale that Safeway consistently included in its shelf advertising. Mr. Tempest understood the reference price to be the true ordinary price of the wine sold at Safeway stores, and believed that he was getting a time-limited promotion through his Safeway Rewards membership by buying the wine during the duration of the sale. Mr. Tempest did not realize that the sale would actually be indefinite and that Safeway would not sell the wine in question to Safeway Rewards members at the reference price.

47.    Mr. Tempest would not have purchased individual bottles of wine if he had known that he was not receiving time-limited savings off a former price, as he was led to believe, or he would

not have purchased it on the same terms or the same price.

48. Mr. Tempest would buy member-priced wine from Safeway in the future, if Mr. Tempest could trust that the advertised discounts were actual time-limited markdowns from true reference prices.

49. Mr. Tempest did not read and was not aware of an email from Safeway purporting to bind him to arbitration, and he learned of this email when Safeway filed its motion to compel arbitration. He promptly opted out of arbitration by sending a letter on November 15, 2024.

2. **Plaintiff Harvey**

50. Plaintiff Harvey is a Safeway Rewards member. Within the applicable statute of limitations, and while she was a Safeway Rewards member, Ms. Harvey purchased wines including La Marca Prosecco, Sutter Home Sweet Red, and Sutter Home Chardonnay from a Safeway located in San Francisco, California. The wine that Ms. Harvey purchased was advertised as marked down from a reference price, as a time-limited discount promotion for Safeway Rewards members. Before she purchased individual bottles of wine from Safeway stores, Ms. Harvey saw a higher price affixed to the store shelf with a bright flyer beneath that advertised a time-limited temporary sale price on individual bottles of wine that was several dollars less than the affixed shelf price. The examples shown in paragraphs 30-32 are substantially similar to the discounted prices that Ms. Harvey reviewed when deciding to buy wines, including individual bottles of La Marca Prosecco, Sutter Home Sweet Red, and Sutter Home Chardonnay.

51. Based on Safeway's representations on its store shelves, Ms. Harvey believed that she was buying wine at a temporary discounted sale price and had therefore saved money on the purchase by making it during the time-period for the sale that Safeway consistently included in its shelf advertising. Ms. Harvey understood the reference price to be the true ordinary price of the wine sold at Safeway stores, and believed that she was getting a time-limited promotion through her Safeway Rewards membership by buying the wine during the duration of the sale. Ms. Harvey did not realize that the sale would actually be indefinite and that Safeway would not sell the wine in question to

Safeway Rewards members at the reference price.

52.   Ms. Harvey would not have purchased individual bottles of wine if she had known that she was not receiving time-limited savings off a former price, as she was led to believe, or she would not have purchased it on the same terms or the same price.

53.   Ms. Harvey would buy member-priced wine from Safeway in the future, if she could trust that the advertised discounts were actual time-limited markdowns from true reference prices.

54.   Ms. Harvey did not read and was not aware of an email from Safeway purporting to bind her to arbitration, and she learned of this email when Safeway filed its motion to compel arbitration. She promptly opted out of arbitration by sending a letter on November 15, 2024.

**3.   Plaintiff Horner**

55.   Plaintiff Horner is a Safeway Rewards member. Within the applicable statute of limitations, Ms. Horner purchased wines including Chateau Ste. Michelle Cabernet Sauvignon from a Safeway located in Oregon. The wine that Ms. Horner purchased was advertised as marked down from a reference price, as a time-limited discount promotion for Safeway Rewards members. Before she purchased individual bottles of wine from Safeway stores, Ms. Harvey saw a higher price affixed to the store shelf with a bright flyer beneath that advertised a time-limited temporary sale price on individual bottles of wine that was several dollars less than the affixed shelf price. The examples shown in paragraphs 30-32 are substantially similar to the discounted prices that Ms. Horner reviewed when deciding to buy wines, including individual bottles of Chateau Ste. Michelle Cabernet Sauvignon.

56.   Based on Safeway's representations on its store shelves, Ms. Horner believed that she was buying wine at a temporary discounted sale price and had therefore saved money on the purchase by making it during the time-period for the sale that Safeway consistently included in its shelf advertising. Ms. Horner understood the reference price to be the true ordinary price of the wine sold at Safeway stores, and believed that she was getting a time-limited promotion through her Safeway Rewards membership by buying the wine during the duration of the sale. Ms. Horner did not realize that the sale would actually be indefinite and that Safeway would not sell the wine in question to

Safeway Rewards members at the reference price.

57.     Ms. Horner would not have purchased the individual bottles of wine if she had known that she was not receiving time-limited savings off a former price, as she was led to believe, or she would not have purchased it on the same terms or the same price.

58.     Ms. Horner would buy member-priced wine from Safeway in the future, if she could trust that the advertised discounts were actual time-limited markdowns from true reference prices.

59.     Ms. Horner did not read and was not aware of an email from Safeway purporting to bind her to arbitration, and she learned of this email when Safeway filed its motion to compel arbitration. She promptly opted out of arbitration by sending a letter on November 15, 2024.

**4.     Plaintiff Brouhard**

60.     Plaintiff Brouhard is a Safeway Rewards member. Within the applicable statute of limitations, and while she was a Safeway Rewards member, Ms. Brouhard purchased wines including Apothic Red Blend, Joel Gott 815 Cabernet Sauvignon, Menage a Trois Red, and Chateau Ste. Michelle Cabernet Sauvignon from a Safeway located in Oregon. The wine that Ms. Brouhard purchased was advertised as marked down from a reference price, as a time-limited discount promotion for Safeway Rewards members. Before she purchased individual bottles of wine from Safeway stores, Ms. Brouhard saw a saw a higher price affixed to the store shelf with a bright flyer beneath that advertised a time-limited temporary sale price on individual bottles of wine that was several dollars less than affixed the shelf price. The examples shown in paragraphs 30-32 are substantially similar to the discounted prices that Ms. Brouhard reviewed when deciding to buy wines, including individual bottles of Apothic Red Blend, Joel Gott 815 Cabernet Sauvignon, Menage a Trois Red, and Chateau Ste. Michelle Cabernet Sauvignon.

61.     Based on Safeway's representations on its store shelves, Ms. Brouhard believed that she was buying wine at a temporary discounted sale price and had therefore saved money on the purchase by making it during the time-period for the sale that Safeway consistently included in its shelf advertising. Ms. Brouhard understood the reference price to be the true ordinary price of the wine

sold at Safeway stores, and believed that she was getting a time-limited promotion through her Safeway Rewards membership by buying the wine during the duration of the sale. Ms. Brouhard did not realize that the sale would actually be indefinite and that Safeway would not sell the wine in question to Safeway Rewards members at the reference price.

62. Ms. Brouhard would not have purchased individual bottles of wine if she had known that she was not receiving time-limited savings off a former price, as she was led to believe, or she would not have purchased it on the same terms or the same price.

63. Ms. Brouhard would buy member-priced wine from Safeway in the future, if she could trust that the advertised discounts were actual time-limited markdowns from true reference prices.

64. Ms. Brouhard did not read and was not aware of an email from Safeway purporting to bind her to arbitration, and she learned of this email when Safeway filed its motion to compel arbitration. She promptly opted out of arbitration by sending a letter on November 15, 2024.

### 5. Plaintiff McCarty

65. Plaintiff McCarty is a Safeway Rewards member. Within the applicable statute of limitations, and while she was a Safeway Rewards member, Ms. McCarty purchased wines including Menage a Trois Red from a Safeway located in Oregon. The wine that Ms. McCarty purchased was advertised as marked down from a reference price, as a time-limited discount promotion for Safeway Rewards members. Before she purchased individual bottles of wine from Safeway stores, Ms. McCarty saw a saw a higher price affixed to the store shelf with a bright flyer beneath that advertised a time-limited temporary sale price on individual bottles of wine that was several dollars less than affixed the shelf price. The examples shown in paragraphs 30-32 are substantially similar to the discounted prices that Ms. McCarty reviewed when deciding to buy wines, including individual bottles of Menage a Trois Red.

66. Based on Safeway's representations on its store shelves, Ms. McCarty believed that she was buying wine at a temporary discounted sale price and had therefore saved money on the purchase by making it during the time-period for the sale that Safeway consistently included in its shelf

advertising. Ms. McCarty understood the reference price to be the true ordinary price of the wine sold at Safeway stores, and believed that she was getting a time-limited promotion through her Safeway Rewards membership by buying the wine during the duration of the sale. Ms. McCarty did not realize that the sale would actually be indefinite and that Safeway would not sell the wine in question to Safeway Rewards members at the reference price.

67. Ms. McCarty would not have purchased the individual bottles of wine if she had known that she was not receiving time-limited savings off a former price, as she was led to believe, or she would not have purchased it on the same terms or the same price.

68. Ms. McCarty would buy member-priced wine from Safeway in the future, if she could trust that the advertised discounts were actual time-limited markdowns from true reference prices.

69. Ms. McCarty did not read and was not aware of an email from Safeway purporting to bind her to arbitration, and she learned of this email when Safeway filed its motion to compel arbitration. She promptly opted out of arbitration by sending a letter on November 15, 2024.

### 6. Plaintiff Beam

70. Plaintiff Beam is a Safeway Rewards member. Within the applicable statute of limitations, and while she was a Safeway Rewards member, Ms. Beam purchased wines including Quail Oak Cabernet Sauvignon, Quail Oak Merlot, Quail Oak Chardonnay, Firefly Ridge Cabernet Sauvignon, Firefly Red Blend, and Headsnapper Wine Radiant Red from a Safeway located in Oregon. The wine that Ms. Beam purchased was advertised as marked down from a reference price, as a time-limited discount promotion for Safeway Rewards members. Before she purchased individual bottles of wine from Safeway stores, Ms. Beam saw a saw a higher price affixed to the store shelf with a bright flyer beneath that advertised a time-limited temporary sale price on individual bottles of wine that was several dollars less than affixed the shelf price. The examples shown in paragraphs 30-32 are substantially similar to the discounted prices that Ms. Beam reviewed when deciding to buy wines, including individual bottles of Quail Oak Cabernet Sauvignon, Quail Oak Merlot, Quail Oak Chardonnay, Firefly Ridge Cabernet Sauvignon, Firefly Red Blend, and Headsnapper Wine Radiant

Red.

71.    Based on Safeway's representations on its store shelves, Ms. Beam believed that she was buying wine at a temporary discounted sale price and had therefore saved money on the purchase by making it during the time-period for the sale that Safeway consistently included in its shelf advertising. Ms. Beam understood the reference price to be the true ordinary price of the wine sold at Safeway stores, and believed that she was getting a time-limited promotion through her Safeway Rewards membership by buying the wine during the duration of the sale. Ms. Beam did not realize that the sale would actually be indefinite and that Safeway would not sell the wine in question to Safeway Rewards members at the reference price.

72.    Ms. Beam would not have purchased the individual bottles of wine if she had known that she was not receiving time-limited savings off a former price, as she was led to believe, or she would not have purchased it on the same terms or the same price.

73.    Ms. Beam would buy member-priced wine from Safeway in the future, if she could trust that the advertised discounts were actual time-limited markdowns from true reference prices.

74.    Ms. Beam did not read and was not aware of an email from Safeway purporting to bind her to arbitration, and she learned of this email when Safeway filed its motion to compel arbitration. She promptly opted out of arbitration by sending a letter on November 15, 2024.

### 7.    Plaintiff Lundt

75.    Plaintiff Lundt is a Safeway Rewards member. Within the applicable statute of limitations, and while he was a Safeway Rewards member, Mr. Lundt purchased wines including La Marca Prosecco, Creamery Chardonnay, and Butter Chardonnay from a Safeway located in the District of Columbia. The wine that Mr. Lundt purchased was advertised as marked down from a reference price, as a time-limited discount promotion for Safeway Rewards members. Before he purchased individual bottles of wine from Safeway stores, Mr. Lundt saw a higher price affixed to the store shelf with a bright flyer beneath that advertised a time-limited temporary sale price on individual bottles of wine that was several dollars less than affixed the shelf price. The examples shown in paragraphs 30-

32 are substantially similar to the discounted prices that Mr. Lundt reviewed when deciding to buy wines, including individual bottles of La Marca Prosecco, Creamery Chardonnay, and Butter Chardonnay.

76.    Based on Safeway's representations on it store shelves, Mr. Lundt believed that he was buying wine at a temporary discounted sale price and had therefore saved money on the purchase by making it during the time-period for the sale that Safeway consistently included in its shelf advertising. Mr. Lundt understood the reference price to be the true ordinary price of the wine sold at Safeway stores, and believed that he was getting a time-limited promotion through his Safeway Rewards membership by buying the wine during the duration of the sale. Mr. Lundt did not realize that the sale would actually be indefinite and that Safeway would not sell the wine in question to Safeway Rewards members at the reference price.

77.    Mr. Lundt would not have purchased individual bottles of wine if he had known that he was not receiving time-limited savings off a former price, as he was led to believe, or he would not have purchased it on the same terms or the same price.

78.    Mr. Lundt would buy member-priced wine from Safeway in the future, if Mr. Lundt could trust that the advertised discounts were actual time-limited markdowns from true reference prices.

79.    Mr. Lundt did not read and was not aware of an email from Safeway purporting to bind him to arbitration. He promptly opted out of arbitration by sending a letter on February 11, 2025.

**D.    No Adequate Remedy At Law**

80.    Plaintiffs and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiffs and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that

21

governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

81. Equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the product is determined to be an amount less than the premium price of the product. Without compensation for the full premium price of the product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

82. Even if legal remedies may be available. Plaintiffs seek equitable remedies in the alternative to legal remedies which are as of yet uncertain.

**CLASS ACTION ALLEGATIONS**

83. Plaintiffs bring this action on behalf of themselves and proposed Classes, defined as follows:

**Class:** All persons residing in the United States who (1) are members of Safeway's rewards program and (2) while holding membership in Safeway's rewards program, purchased wine, other than for purposes of resale, from a Safeway store that was advertised at a members-only price.

**California Subclass:** All persons residing in California who (1) are members of Safeway's rewards program and (2) while holding membership in Safeway's rewards program, purchased wine, other than for purposes of resale, from a Safeway store within California that was advertised at a members-only price.

**Oregon Subclass:** All persons residing in Oregon who (1) are members of Safeway's rewards program and (2) while holding membership in Safeway's rewards program, purchased wine, other than for purposes of resale, from a Safeway store within Oregon that was advertised at a members-only price.

**District of Columbia Subclass**: All persons residing in the District of Columbia who (1) are members of Safeway's rewards program and (2) while holding membership in Safeway's rewards program, purchased wine, other than for purposes of resale, from a Safeway store within the District of Columbia that was advertised at a members-only price.

84. The time period for the Classes is the applicable statute of limitations preceding the filing of this action through the date a class is certified.

85. Excluded from the Classes are Safeway, its parents, subsidiaries, affiliates, officers, and directors; any entity in which Safeway has a controlling interest; all potential Class members who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation as well as their immediate family members.

86. **Numerosity.** The Classes are so large that joinder of all of its members would be impracticable. There are likely thousands of Class members.

87. **Commonality.** Safeway has acted or refused to act on grounds that apply equally to all members of the Classes. Absent certification, the relief sought by this Complaint creates the possibility of inconsistent judgments or obligations upon Safeway. Numerous common issues of law and fact exist, including:

    a.    Whether Safeway's advertising practices were and are likely to mislead consumers;

    b.    Whether Safeway's members-only wine prices are false and misleading;

    c.    Whether Safeway continues to make false or misleading statements of fact concerning the time limits on price reductions for Rewards members;

    d.    Whether reliance on Safeway's misrepresentations and omissions can be presumed;

    e.    Whether Safeway's acts and practices described herein are unfair;

    f.    Whether Safeway's advertising practices are "business practices" under the UCL;

    g.    Whether Safeway's practice of advertising falsely discounted wine is unlawful;

    h.    Whether Safeway's advertisement of fabricated discounts off fictitious

23

reference prices is a misrepresentation of a material fact which has a tendency to mislead;

i.     Whether Safeway's advertised discounts use innuendo or ambiguity as to a material fact, with a tendency to mislead;

j.     Whether California law applies to Safeway's practices nationwide;

k.     Whether Plaintiffs and the Class Members were harmed by Safeway's misleading advertising practices;

l.     Whether Plaintiffs and the Class Members are entitled to full or partial refunds;

m.    Whether Plaintiffs and the Class Members are entitled to statutory damages;

n.     Whether Plaintiffs and the Class Members are entitled to punitive damages; and

o.     Whether Safeway should be enjoined from continuing to advertise fictitious sales to its Rewards members.

88.    **Predominance.** The common issues predominate over individualized inquiries in this action because Safeway's liability can be established as to all members of the Classes.

89.    **Typicality.** Typicality exists because Plaintiffs' claims are identical to the claims of the Class members. Their claims all arise from Safeway's practice of advertising false discounts off fictitious reference prices and are based on the same legal theories.

90.    **Adequacy.** Plaintiffs are adequate class representative as Plaintiffs have no interest adverse to the Classes and Safeway has no defenses unique to Plaintiffs. Plaintiffs have hired competent, experienced class action attorneys to represent the Classes and prosecute the Classes' claims.

91.    **Superiority.** There are substantial benefits to proceeding as a class action that render proceeding as a class action superior to any alternatives, including that it will provide a realistic means for members of the Classes to recover damages; the damages suffered by members of the Classes may be relatively small; it would be substantially less burdensome on the courts and the parties than

24

numerous individual proceedings; many members of the Classes may be unaware that they have legal recourse for the conduct alleged herein; and because issues common to members of the Classes can be effectively managed in a single proceeding. Plaintiffs know of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT I
**Violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500** *et seq.*
**(On behalf of Plaintiffs and the proposed Class and California Subclass).**

92.     Plaintiffs restate paragraphs 1 through 91 as though set forth in full herein.

93.     Plaintiffs bring this claim on their own behalf and on behalf of members of the Class and California Subclass.

94.     Safeway's acts and practices alleged herein violate the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*

95.     The FAL makes it illegal to advertise prices that are "untrue or misleading."

96.     Safeway's use of false reference prices that are not the ordinary, bona fide price of its wine, and advertising misleading fabricated discounts off the false reference prices for its Rewards members, violate the FAL.

97.     Safeway advertised to Safeway Rewards members that it sold wine at a particular reference price, as if the reference price were the prevailing market price within the three months preceding publication of the advertisement. However, the reference prices that Safeway advertised to Safeway Rewards members were not the prevailing price offered to Safeway Rewards members within the prior three months, nor did Safeway present the dates during which the reference price was offered for Safeway Rewards members.

98.     The use of the false reference prices, and the amount of the purported discount off the false reference price (which is not a real discount because the reference price is false), is an untrue or misleading advertising device. The actual reference price of the wine is material because a reasonable person would attach importance to its existence or nonexistence when determining his or her choice of action in the transaction, and because Safeway regards the matter as important in determining the

25

buyer's choice of action.

99.     Safeway failed to disclose that it does not sell wine to Safeway Rewards members at the reference prices, and that omission was material as well.

100.     By showing a discount sale price with a specified end date, Safeway used innuendo or ambiguity as to a material fact (i.e. the actual price of the wine for Safeway Rewards members, and the length of time it would be offered at a discount) with a tendency to mislead.

101.     Finally, Safeway's use of false reference prices is a false or misleading representation of fact concerning the reasons for, existence of, or amounts of price reductions, as well as the price of the wine in comparison with the price of competitors' or Safeway's own prices at a past or future time.

102.     Plaintiffs and the Class and California Subclass suffered actual injuries as a result of Safeway's unfair and deceptive practices. Safeway acted knowingly, recklessly, and in conscious disregard of the true facts in perpetuating its deceptive advertising scheme and causing injuries to Plaintiffs and the Class and California Subclass.

103.     Plaintiffs seek a permanent public injunction preventing Safeway from continuing to make untrue and misleading statements in its advertising.

## COUNT II
**Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200
(On behalf of Plaintiffs and the proposed Class and California Subclass).**

104.     Plaintiffs restate paragraphs 1 through 91 as though set forth in full herein.

105.     Plaintiffs bring this claim on their own behalf and on behalf of members of the Class and California Subclass.

106.     Safeway's practices as alleged herein are unfair competition in violation of Bus. & Prof. Code § 17200. Safeway's acts alleged herein are unfair and likely to deceive the general public, and unlawful in that they violate Bus. & Prof. Code § 17500 (false and misleading advertising) and Cal. Civ. Code §§ 1770(a)(13)-(14) (CLRA), along with other state and federal statutes and regulations.

107.     Safeway's advertising practices described herein are a "business practice" within the

26

meaning of the UCL.

108.     As a result of Safeway's unfair, fraudulent, and unlawful business practices, Plaintiffs and the Class and California Subclass have been injured.

**A.     Fraudulent Prong**

109.     Safeway's use of false reference prices for Rewards members that are not the ordinary, bona fide price of its wine, and advertising misleading fabricated discounts for Rewards members off the false reference prices, was fraudulent.

110.     The use of the false reference prices, and the amount of the purported discount off the false reference price for a false time period (which is not a real discount because the reference price is false), is an untrue or misleading advertising device. The actual reference price of the wine is material because a reasonable person would attach importance to its existence or nonexistence when determining his or her choice of action in the transaction, and because Safeway regards the matter as important in determining the buyer's choice of action.

111.     Safeway failed to disclose that it does not sell wine to Safeway Rewards members at the reference prices, and that omission was material as well.

112.     By showing a discount sale price with a specified end date, Safeway used innuendo or ambiguity as to a material fact (i.e. the actual price of the wine for Safeway Rewards members, and the length of time it would be offered at a discount) with a tendency to mislead.

113.     Finally, Safeway's use of false reference prices is a false or misleading representation of fact concerning the reasons for, existence of, or amounts of price reductions, as well as the price of the wine in comparison with the price of competitors' or Safeway's own prices at a past or future time.

**B.     Unfair Prong**

114.     Safeway's use of false reference prices for Rewards members that are not the ordinary, bona fide price of its wine, and advertising misleading fabricated discounts for Rewards members off the false reference prices, was unfair. It offends public policy as articulated under California law and

27

the Federal Trade Commission, and demonstrates immoral, unethical, unscrupulous activities that caused substantial injuries, including to Plaintiffs and other members of the Class and California Subclass.

### C. Unlawful Prong

115. Safeway's use of false reference prices for Rewards members that are not the ordinary, bona fide price of its wine, and advertising misleading fabricated discounts for Rewards members off the false reference prices, was unlawful in that it violated the FAL and CLRA as alleged herein, as well as FTC regulations. *See* 16 C.F.R. § 233.1. For instance, FTC regulations prohibit false or misleading "former price comparisons," making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

### D. Remedies

116. Plaintiffs and the Class and California Subclass Members suffered actual injuries, including monetary harm, as a result of Safeway's unfair and deceptive practices.

117. Plaintiffs seek a permanent public injunction preventing Safeway from continuing to make untrue and misleading statements in its advertising.

## COUNT III
### Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1760 *et seq.* (On behalf of Plaintiffs and the proposed Class and California Subclass).

118. Plaintiffs restate paragraphs 1 through 91 as though set forth in full herein.

119. Plaintiffs bring this claim on their own behalf and on behalf of members of the Class and California Subclass.

120. Plaintiffs and the Class and California Subclass members are "consumers" within the meaning of the CLRA. Cal. Civ. Code § 1761(d).

121. Safeway is a "person" within the meaning of the CLRA, and the wine it sells are

"goods" as defined in the CLRA. *Id.* § 1761(c), (a).

122.    Purchases of wine from Safeway by Plaintiffs and the Class and California Subclass are "transactions" under the CLRA. *Id.* § 1761(e).

123.    The CLRA makes it illegal to, among other things:

a.    Make false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions, *id.* § 1770(a)(13); and

b.    Represent that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or which are prohibited by law, *id.* § 1770(a)(14).

124.    Safeway's use of false reference prices for Rewards members that are not the ordinary, bona fide price of its wine, and advertising misleading fabricated discounts for Rewards members off the false reference prices, violated the CLRA.

125.    Safeway's use of false reference prices for Rewards members is a false or misleading representation of fact concerning the reasons for, existence of, or amounts of price reductions, as well as the price of the wine in comparison with the price of competitors' or Safeway's own prices at a past or future time.

126.    The use of the false reference prices, and the amount of the purported discount off the false reference price for a false time (which is not a real discount because the reference price is false) are untrue or misleading statements. The actual reference price of the wine is material because a reasonable person would attach importance to its existence or nonexistence when determining his or her choice of action in the transaction, and because Safeway regards the matter as important in determining the buyer's choice of action.

127.    Safeway failed to disclose that it does not sell wine to Safeway Rewards members at the reference prices, and that omission was material as well.

128.    By showing a discount sale price with a specified end date, Safeway used innuendo or ambiguity as to a material fact (i.e. the actual price of the wine for Safeway Rewards members, and the length of time it would be offered at a discount) with a tendency to mislead.

29

129.    Safeway represented that Safeway Rewards members were enjoying rights and benefits, including a time-limited promotional price, that they did not actually enjoy, because the purported sales were not time-limited.

130.    Pursuant to Cal. Civ. Code § 1782, Plaintiffs Tempest, Harvey, Horner, and Brouhard sent notification, a true and correct copy of which is attached hereto as Exhibit A, to Safeway in writing by certified mail of the particular violations of the CLRA and demanded that Safeway rectify the problems associated with the actions above.

131.    The notice period having run since Plaintiffs' counsel previously sent notification as required by the CLRA, Plaintiffs seek actual, punitive, and statutory damages as appropriate, as Safeway has not rectified the notified issues within 30 days of the date of written notice pursuant to Cal. Civ. Code § 1782.

**COUNT IV**
**Breach of Contract**
**(On behalf of Plaintiffs and the proposed California and Oregon Subclasses).**

132.    Plaintiffs restate paragraphs 1 through 91 as though set forth in full herein.

133.    Plaintiffs bring this claim on their own behalf and on behalf of members of the California and Oregon Subclasses.

134.    Plaintiffs and members of the California and Oregon Subclasses entered into contracts when they purchased wine from Safeway.

135.    The contracts provided that Plaintiffs and members of the California and Oregon Subclasses would pay Safeway for the wine purchased.

136.    The contracts further required that Safeway provide Plaintiffs and members of the California and Oregon Subclasses with wine products that have a former price, and a market value, equal to the advertised regular prices. They also required that Safeway provide Plaintiffs and members of the California and Oregon Subclasses with the advertised specific discounts for Safeway Rewards members. These were specific and material terms of the contracts.

137.    Plaintiffs and members of the California and Oregon Subclasses paid Safeway for the

30

wine that they purchased and satisfied all other conditions of their contracts.

138.     Safeway breached the contracts with Plaintiffs and members of the California and Oregon Subclasses by failing to provide wine that had a regular price and market value for Safeway Rewards members equal to the advertised reference prices, and by failing to provide promised discounts.

139.     Plaintiffs provided Safeway with notice of this breach of contract by letter sent certified mail, return receipt requested, on September 17, 2024.

140.     As a direct and proximate result of Safeway's breaches, Plaintiffs and members of the California and Oregon Subclasses were deprived of the benefit of their bargained for exchange and have suffered damages in an amount to be proven at trial.

**COUNT V**
**Quasi-Contract/Unjust Enrichment**
**(On behalf of Plaintiffs and the proposed California and Oregon Subclasses).**

141.     Plaintiffs restate paragraphs 1 through 91 as though set forth in full herein.

142.     Plaintiffs bring this claim on their own behalf and on behalf of members of the California and Oregon Subclasses, in the alternative to their Breach of Contract claim.

143.     As alleged in detail herein, Safeway's false and misleading advertising caused Plaintiff and members of the California and Oregon Subclasses to purchase wine at falsely discounted prices. Plaintiffs conferred a benefit upon Safeway when they purchased the falsely discounted wine, and Safeway received that direct and unjust benefit.

144.     It would be unjust and inequitable to permit Safeway to retain these ill-gotten benefits.

145.     (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiffs and members of the California and Oregon Subclasses are void or voidable.

146.     Plaintiffs and members of the California and Oregon Subclasses seek restitution and in the alternative, recission.

**COUNT VI**
**Fraud**
**(On behalf of Plaintiffs and the proposed California and Oregon Subclasses).**

31

147.     Plaintiffs restate paragraphs 1 through 91 as though set forth in full herein.

148.     Plaintiffs bring this claim on their own behalf and on behalf of members of the California and Oregon Subclasses.

149.     Safeway's use of false reference prices for Rewards members that are not the ordinary, bona fide price of its wine, and advertising misleading fabricated discounts for Rewards members off the false reference prices, was fraudulent.

150.     The use of the false reference prices, and the amount of the purported discount off the false reference price for a false time period (which is not a real discount because the reference price is false), is an untrue or misleading advertising device. The actual reference price of the wine is material because a reasonable person would attach importance to its existence or nonexistence when determining his or her choice of action in the transaction, and because Safeway regards the matter as important in determining the buyer's choice of action.

151.     Safeway failed to disclose that it does not sell wine to Safeway Rewards members at the reference prices, and that omission was material as well.

152.     By showing a discount sale price with a specified end date, Safeway used innuendo or ambiguity as to a material fact (i.e. the actual price of the wine for Safeway Rewards members, and the length of time it would be offered at a discount) with a tendency to mislead.

153.     Finally, Safeway's use of false reference prices is a false or misleading representation of fact concerning the reasons for, existence of, or amounts of price reductions, as well as the price of the wine in comparison with the price of competitors' or Safeway's own prices at a past or future time.

154.     By means of Safeway's fraudulent misrepresentations and omissions, upon which Plaintiffs and members of the California and Oregon Subclasses reasonably and justifiably relied, Safeway intended to and did induce Plaintiffs and members of the California and Oregon Subclasses to purchase falsely discounted wine.

155.     Safeway's fraudulent actions caused damage to Plaintiffs and members of the

California and Oregon Subclasses, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VII
### Violation of Oregon Unlawful Trade Practices Act, O.R.S. 646.605 *et seq.*
### (On behalf of Plaintiffs Horner, Brouhard, McCarty, Beam, and the proposed Oregon Subclass).

156.    Plaintiffs Horner, Brouhard, McCarty, and Beam restate paragraphs 1 through 91 as if set forth fully herein.

157.    Plaintiffs Horner, Brouhard, McCarty, and Beam bring this claim on their own behalf and on behalf of members of the Oregon Subclass.

158.    The Oregon Unlawful Trade Practices Act ("OUTPA") prohibits persons from engaging in trade practices declared unlawful under ORS 646.608.

159.    Persons that suffer an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act, or practice declared unlawful under ORS 646.608 may bring an action to recover actual damages or statutory damages of $200, whichever is greater. ORS 646.638(1).

160.    Plaintiffs Horner, Brouhard, McCarty, Beam, and the Oregon Subclass Members, are "persons" under ORS 646.605(4).

161.    Safeway is a "person" under ORS 646.605(4).

162.    Safeway engages in "trade" or "commerce," including when it deploys wine advertising practices, within the meaning of ORS 646.605(8) because it advertises, offers, or distributes goods, including in a manner that directly or indirectly affects the people of Oregon.

163.    The OUTPA makes it illegal to, among other things:

a.    Make false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions, ORS 646.608(1)(j);

b.    Make false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services, ORS 646.608(1)(s); or

c.    Engages in other unfair or deceptive conduct in trade or commerce, as set

33

forth in an Administrative Rule established by the Attorney General of Oregon, ORS 646.608(1)(u), (4).

164.   Oregon Administrative Rule 137-020-0010 makes it unlawful trade practice to represent that goods are available for sale or lease at an offering price less than a reference price unless such reference price:

   a.   is a price at which the person, in the regular course of its business, made good faith sales of the same or similar goods, or, if no sales were made, offered in good faith to make sales of the same or similar goods either (i) within the preceding 30 days or (ii) at any other time in the past which is identified;

   b.   is the price at which the person will offer the same or similar goods for sale in the future, provided that (i) the reference price is stated or regularly ascertainable, (ii) if the reference price will not be put into effect for more than 90 days after the representation, the effective date of the reference price is stated; and (iii) such reference price is actually put into effect;

   c.   is a price at which an identified or identifiable competitor is or has in the recent regular course of business offered to make good faith sales of the same or regular goods; or

   d.   is required to be affixed to the goods.

165.   Safeway's use of false reference prices for Rewards members that are not the ordinary, bona fide price of its wine, and advertising misleading fabricated discounts for Rewards members off the false reference prices, violated the OUTPA. Safeway, in fact, never will only offer individual bottles of wine to U Rewards Members at the discount price—and will never offer the individual bottles of wine to U Rewards members at the original reference prices it includes in its advertising.

166.   Safeway made false or misleading statements of fact concerning the existence of a price reduction, and concerning the offering price of goods.

167.   Safeway also engaged in other unfair or deceptive conduct by representing that goods are available for sale or lease at an offering price less than a reference price, without any of the

34

applicable exceptions.

168.    The use of the false reference prices, and the amount of the purported discount off the false reference price for a false time (which is not a real discount because the reference price is false) are false or misleading statements. The actual reference price of the wine is material because a reasonable person would attach importance to its existence or nonexistence when determining his or her choice of action in the transaction, and because Safeway regards the matter as important in determining the buyer's choice of action.

169.    Safeway's violations of OUTPA were willful, reckless, or knowing.

170.    Plaintiffs Horner, Brouhard, McCarty, Beam, and the Oregon Subclass Members suffered ascertainable losses as a result of Safeway's unfair and deceptive practices, in that they purchased wine that they would not have purchased had they known the truth. They are entitled to recover $200 per class member plus prejudgment interest, attorneys' fees and costs, and punitive damages.

171.    Plaintiff Horner, Brouhard, McCarty, Beam, and the Oregon Subclass Members are also entitled to punitive damages, as Safeway's actions were accompanied by fraud, ill will, recklessness, wantonness, oppressiveness, and willful disregard for their rights.

172.    Plaintiffs Horner, Brouhard, McCarty, and Beam also seek a permanent injunction preventing Safeway from continuing to deploy false reference prices and fictitious discounts.

### COUNT VIII
**Violation of District of Columbia Consumer Protection Procedures Act ("CPPA"),**
**D.C. Code § 28-3901, *et seq.***
**(On behalf of Plaintiff Lundt and the proposed District of Columbia Subclass).**

173.    Plaintiff Lundt restates paragraphs 1 through 91 as if set forth fully herein.

174.    Plaintiff Lundt brings this claim on his own behalf and on behalf of members of the District of Columbia Subclass.

175.    The CPPA is a remedial statute that is to be broadly construed. It establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia.

35

176.     The goods that Safeway provides consumers are for personal, household, or family purposes and therefore are consumer goods.

177.     Safeway, in the ordinary course of business, supplies consumer goods and services and therefore is a merchant under the CPPA. D.C. Code § 28-3901(a)(1)(2).

178.     Safeway's customers receive consumer goods for personal, household, or family uses and are therefore consumers under the CPPA. D.C. Code § 28-3901(a)(3).

179.     Safeway's practices described herein are "trade practices" within the meaning of the CPPA because they are an act that does or would create, make available, provide information about, or directly or indirectly solicit or offer or effectuate a sale or transfer of goods. D.C. Code § 28-3901(a)(6).

180.     The CPPA prohibits misleading and deceptive trade practices in connection with the offer, sale, and supply of consumer goods and services. D.C. Code § 28-3904.

181.     The CPPA makes it illegal to, among other things:

    a.     Misrepresent as to a material fact which has a tendency to mislead (D.C. Code § 28-3904(e));

    b.     Fail to state a material fact if such failure tends to mislead (D.C. Code § 28-3904(f));

    c.     Use innuendo or ambiguity as to a material fact, which has a tendency to mislead (D.C. Code § 28-3904(f-1)); and

    d.     Make false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions, or the price in comparison to price of competitors or one's own price at a past or future time (D.C. Code § 28-3904(j)).

182.     Safeway's use of false reference prices for Rewards members that are not the ordinary, bona fide price of its wine, and advertising misleading fabricated discounts for Rewards members off the false reference prices, violated the CLRA.

183.     Safeway's use of false reference prices for Rewards members is a false or misleading representation of fact concerning the reasons for, existence of, or amounts of price reductions, as well

36

as the price of the wine in comparison with the price of competitors' or Safeway's own prices at a past or future time.

184.     The use of the false reference prices, and the amount of the purported discount off the false reference price for a false time (which is not a real discount because the reference price is false) are untrue or misleading statements. The actual reference price of the wine is material because a reasonable person would attach importance to its existence or nonexistence when determining his or her choice of action in the transaction, and because Safeway regards the matter as important in determining the buyer's choice of action.

185.     Safeway failed to disclose that it does not sell wine to Safeway Rewards members at the reference prices, and that omission was material as well.

186.     By showing a discount sale price with a specified end date, Safeway used innuendo or ambiguity as to a material fact (i.e. the actual price of the wine for Safeway Rewards members, and the length of time it would be offered at a discount) with a tendency to mislead.

187.     Safeway represented that Safeway Rewards members were enjoying rights and benefits, including a time-limited promotional price, that they did not actually enjoy, because the purported sales were not time-limited.

188.     Safeway's misleading acts or practices harm consumers in the District of Columbia.


**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request this Court enter judgment in favor of Plaintiffs and the Classes as follows:

A.     An order certifying the Classes, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' counsel as Class Counsel;

B.     Awarding all damages supported by law including actual, statutory, treble, and punitive

37

damages;

        C.      Imposing a permanent injunction banning Safeway from continuing to use false reference price in its marketing of wine;

        D.      Awarding Plaintiffs their reasonable attorneys' fees and costs;

        E.      Granting any additional relief as may be necessary to restore to the Class the money that was acquired by Safeway's unlawful trade practices; and

        F.      Awarding all such other and further relief as the Court finds necessary and proper.

Dated: March 6, 2025              Respectfully submitted,

                             */s/ Annick M. Persinger*

                             **TYCKO & ZAVAREEI LLP**
Annick M. Persinger (Bar No. 272996)
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
apersinger@tzlegal.com

                             **TYCKO & ZAVAREEI LLP**
Katherine M. Aizpuru (*pro hac vice* to be filed)
Allison W. Parr (*pro hac vice* to be filed)
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
kaizpuru@tzlegal.com
aparr@tzlegal.com

                             Neal J. Deckant (Bar No. 322946)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

                             **SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (Bar No. 295032)
166 Geary Street, Ste. 1500-1507

San Francisco, CA 94108
Telephone: 415-839-7000
yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Telephone: 617-377-7404
joel@skclassactions.com

39