Stephanie Sheridan (CA 135910)
Meegan B. Brooks (CA 298570)
Nicolette Shamsian (CA 341466)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone:   628.600.2250
Facsimile:    628.221.5828
ssheridan@beneschlaw.com
mbrooks@beneschlaw.com
nshamsian@beneschlaw.com

Attorneys for Defendant Safeway, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TEMPEST, LADIAMOND HARVEY, SARAH MCGREGOR HORNER, BRIONNA BROUHARD, KERRY MCCARTY, HILLARY BEAM, and CHRISTOPHER LUNDT, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAFEWAY, INC., <br><br> Defendants. | Case No. 3:24-cv-06553-JSC <br><br> **DEFENDANT SAFEWAY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:        June 26, 2025 <br> Time:        10:00 a.m. <br> Courtroom:   8 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on June 26, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Jaqueline Scott Corley of the United States District Court for the Northern District of California, in Courtroom 8 of the United States Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Safeway, Inc. ("Safeway") will and hereby does move this Court for an order dismissing the Second Amended Complaint ("SAC") under Rules 12(b)(1), 12(b)(6), 8, and 9(b) of the Federal Rules of Civil Procedure.

This Motion is brought on the following grounds.

First, Plaintiffs' statutory (UCL, FAL, CLRA, UTPA, CPPA), common-law-fraud, and unjust-enrichment claims fail because they sound in fraud yet do not meet Rule 9(b)'s heightened pleading standard, and because the SAC offers no factual allegations—required under both Rule 9(b) and Rule 8's general pleading standard—suggesting that any reasonable consumer could be deceived.

Second, Plaintiffs Horner, Brouhard, McCarty and Beam's UTPA claim fails because Plaintiffs do not plausibly allege that Safeway engaged in any "method, act or practice declared unlawful under ORS 646.608."  Or. Rev. Stat. Ann. § 646.638.

Third, Plaintiffs have not stated a claim for unjust enrichment because a claim for unjust enrichment cannot stand alone as an independent claim for relief.

Fourth, Plaintiffs' breach-of-contract claims fail because Plaintiffs did not satisfy their burden under Cal. Com. Code § 2607(3)(A) to show that they gave Safeway a reasonable opportunity to cure any alleged breach before filing suit.  Moreover, Plaintiffs' allegations misconstrue the alleged contract.

Finally, Plaintiffs' claims for equitable relief are precluded because Plaintiffs lack standing to seek injunctive relief, and do not adequately allege that they lack an adequate remedy at law.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

//

//

//

Dated:  April 10, 2025

Respectfully submitted,

*s/ Meegan B. Brooks*
STEPHANIE SHERIDAN (CA 135910)
MEEGAN B. BROOKS (CA 298570)
NICOLETTE SHAMSIAN (CA 341466)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorneys for Defendant Safeway, Inc.

1

2                                    **Table of Contents**

3    I.    INTRODUCTION ................................................................................................. 1

4    II.   SUMMARY OF RELEVANT FACTS ................................................................. 2

5          A.    Defendant Safeway, Inc. .......................................................................... 2

6          B.    What Is in the SAC ................................................................................... 3

           C.    What Is Not in the SAC ............................................................................ 3

7    III.  APPLICABLE STANDARD ................................................................................ 4

8    IV.   ARGUMENT ....................................................................................................... 5

9          A.    Plaintiffs' Statutory Claims, Fraud Claim, and Unjust Enrichment Claim Fail
                 Because the SAC Pleads No Facts Suggesting Fraudulent Conduct ................................... 5

10               1.    Plaintiffs Fail to Plead the Circumstances of Their Purchases with
11                     Requisite Particularity ................................................................. 6

12               2.    Reasonable Consumers Would Not Interpret "Member Prices" as
                       Temporary Sales from "Ordinary" Prices ................................... 7

13         B.    Safeway Never Represented Its Member Prices Were Lower than Discount
                 Retailers, But Regardless, Charging Higher Prices Is Not Unfair or Deceptive ................ 9

14
15         C.    Oregon's Pricing Regulations Do Not Help Plaintiffs Horner, Brouhard,
                 McCarty, and Beam State a UTPA Claim ................................................. 10

16         D.    Plaintiffs Have Not Stated a Claim for Unjust Enrichment ...................... 11

17         E.    The Court Should Also Dismiss Plaintiffs' Contract Claim ...................... 12

                 1.    Plaintiffs Failed to Provide the Notice that California Law Requires ................. 12

18
19               2.    Plaintiffs' Breach-of-Contract Claim Misconstrues the Alleged
                       Contract ..................................................................................... 13

20         F.    The Court Should Dismiss or Strike Plaintiffs' Claims for Equitable Relief .................. 14

21               1.    Plaintiffs Lack Article III Standing to Seek Injunctive Relief ............................ 14

22               2.    Plaintiffs' Claims for Equitable Relief Are Precluded Because
                       Plaintiffs Never Allege That They Lack an Adequate Remedy at Law ............... 16

23   V.    CONCLUSION .................................................................................................. 18

24

25

26

27

28

                                              i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alan Neuman Prods., Inc. v. Albright*,
   862 F.2d 1388 (9th Cir. 1988) ....................................................................................6

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) ....................................................................................13

*In re Apple Processor Litig.*,
   No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) ..............................16, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................4

*Augustine v. Talking Rain Bev. Co.*,
   386 F. Supp. 3d 1317 (S.D. Cal. 2019) ....................................................................11

*Azimpour v. Sears, Roebuck & Co.*,
   2016 WL 7626188 (S.D. Cal, Oct. 17, 2016) ............................................................7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................4

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) ....................................................................................5

*Brown v. Starbucks Corp.*,
   No. 18cv2286 JM (WVG), 2019 WL 4183936 (S.D. Cal. Sept. 3, 2019) ...............11

*Caldwell v. Nordic Nats., Inc.*,
   709 F. Supp. 3d 889 (N.D. Cal. 2024) ......................................................................16

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
   169 Cal. App. 4th 116 (2008) ....................................................................................12

*Cimoli v. Alacer Corp.*,
   546 F. Supp. 3d 897 (N.D. Cal. 2021) ......................................................................16

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ....................................................................................................14

*Clark v. Am. Honda Motor Co.*,
   528 F. Supp. 3d 1108 (C.D. Cal. 2021) ....................................................................17

*Clark v. Eddie Bauer LLC*,
   2024 WL 177755 (9th Cir. Jan. 17, 2024) .................................................................17

*Collins v. Wal-Mart Stores, Inc.*,
   No. 3:23-CV-01368-RBM-DEB, 2024 WL 56993 (S.D. Cal. Jan. 4, 2024) ......................13

*Cordes v. Boulder Brands USA, Inc.*,
   No. CV 18-6534 PSG (JCX), 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) .....................15

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ..................................................................................15

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012) ......................................................................13

*Easton v. Wells Fargo & Co.*,
   2022 WL 17886002 (C.D. Cal. Dec. 6, 2022) ............................................................17

*Ebner v. Fresh, Inc.*,
   818 F.3d 799 (9th Cir. 2016) ..................................................................................11

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ...................................................................................7

*Evans v. DSW, Inc.*,
   No. CV 16-3791 JGB (SPX), 2017 WL 7058232 (C.D. Cal. Sept. 14, 2017)...................13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*,
   528 U.S. 167 (2000)...............................................................................................14

*Guzman v. Polaris Indus. Inc.*,
   49 F.4th 1308 (9th Cir. 2022) ................................................................................16

*Haskins v. Symantec Corp.*,
   2016 WL 3391237 (9th Cir. June 20, 2016) .................................................................6

*Hermanson v. Lenovo Grp. Ltd.*,
   2024 WL 819566 (N.D. Cal. Feb. 27, 2024) .................................................................8

*Hovsepian v. Apple, Inc.*,
   2009 WL 5069144 (N.D. Cal. Dec. 17, 2009)..............................................................11

*In re Intel Corp. CPU Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   2021 WL 1198299 (D. Or. Mar. 29, 2021), *aff'd*, 2023 WL 7211394 (9th Cir. Nov. 2,
   2023) ..................................................................................................................17

*Jefferson v. Collins*,
   905 F.Supp.2d 269 (D.D.C.2012) .......................................................................5, 6, 7

iii

**DEFENDANT SAFEWAY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT
Case No. 3:24-cv-06553-JSC**

*Joslin v. Clif Bar & Co.*,
  Case No. 4:18-cv-04941-JSW, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ............................14

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................................................................4, 6

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (2012), *as modified on denial of reh'g* (Feb. 24, 2012) ..............................12

*Lisner v. Sparc Grp. LLC*,
  2021 WL 6284158 (C.D. Cal. Dec. 29, 2021) ...................................................................................9

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)...........................................................................................................................14

*In re MacBook Keyboard Litig.*,
  2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)....................................................................................17

*McBride v. Boughton*,
  123 Cal. App. 4th 379 (2004) ...........................................................................................................11

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ..........................................................................................................................14

*Moody v. Hot Topic, Inc.*,
  No. EDCV230447JGBSPX, 2023 WL 9511159 (C.D. Cal. Nov. 15, 2023) .........................................5

*Moss v. Infinity Ins. Co.*,
  197 F. Supp. 3d 1191 (N.D. Cal. 2016) .............................................................................................17

*Mullins v. Premier Nutrition Corp.*,
  2018 WL 510139 (N.D. Cal. Jan. 23, 2018), *aff'd sub nom. Sonner*, 962 F.3d 1072 ........................17

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) ...............................11

*Philips v. Ford Motor Co.*,
  726 F. App'x 609 (9th Cir. 2018) ......................................................................................................17

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) ...............................................................................................................5

*Prescott v. Reckitt Benckiser LLC*,
  No. 20-cv-02101-BLF, 2020 WL 7075624 (N.D. Cal. Dec. 3, 2020)...................................................5

*Puri v. Khalsa*,
  674 F. App'x 679 (9th Cir. 2017) ........................................................................................................5

*Rael v. N.Y. & Co., Inc.*,
  2016 WL 7655247 (S.D. Cal. Dec. 28, 2016)......................................................................................7

**DEFENDANT SAFEWAY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT
Case No. 3:24-cv-06553-JSC**

*Renn v Otay. Lakes Brewery, LLC*,
    No. 23CV1139-GPC(BLM), 2024 WL 331616 (S.D. Cal. Jan. 29, 2024)........................................14

*Rubenstein v. The Gap, Inc.*,
    14 Cal. App. 5th 870 (2017) ....................................................................................7, 8, 15

*Rutherford Holdings, LLC v. Plaza Del Rey*,
    223 Cal. App. 4th 221 (2014) ...............................................................................................11

*S. Cal. Stroke Rehab. Assocs. v. Nautilus, Inc.*,
    554 F. App'x 656 (9th Cir. 2014) .........................................................................................13

*Saroya v. Univ. of the Pac.*,
    503 F. Supp. 3d 986 (N.D. Cal. 2020) ...............................................................................11

*Scheibe v. Esupplements, LLC*,
    681 F. Supp. 3d 1101 (S.D. Cal. 2023) ..............................................................................17

*Seegert v. Luxottica Retail North America, Inc.*,
    2018 WL 1214888 (S.D. Cal. Feb. 23, 2018) .......................................................................8

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .......................................................................................16, 17

*Sperling v. DSWC, Inc.*,
    699 F. App'x 654 (9th Cir. 2017) .........................................................................................9

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) .............................................................................12

*Stewart v. Kodiak Cakes, LLC*,
    537 F. Supp. 3d 1103 (S.D. Cal. 2021) ..............................................................................15

*Strum v. Exxon Co., U.S.A.*,
    15 F.3d 327 (4th Cir. 1994) ...................................................................................................5

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009).............................................................................................................14

*Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...............................................................................................4

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...............................................................................................5

*Vizcarra v. Michaels Stores, Inc.*,
    2024 WL 64747 (N.D. Cal., Jan. 5, 2024) ..........................................................................12

*Watson v. Crumbl LLC*,
    736 F. Supp. 3d 827 (E.D. Cal. 2024) ................................................................................17

v

**DEFENDANT SAFEWAY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT
Case No. 3:24-cv-06553-JSC**

*Whiting v. AARP*,
701 F. Supp. 2d 21 (D.D.C. 2010), *aff'd*, 637 F.3d 355 (D.C. Cir. 2011) ..............................7

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) ...........................................................................................16

*Witherspoon v. Philip Morris, Inc.*,
964 F.Supp. 455 (D.D.C.1997) ...........................................................................................5

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...........................................................................................3

Cal. Bus. & Prof. Code § 17501 ...................................................................................3, 8, 14

Cal. Civ. Code. § 1770 ...........................................................................................................3

Cal. Com. Code § 2102 .........................................................................................................12

Cal. Com. Code § 2607(3)(A) ...............................................................................................12

Code of the District of Columbia § 28-3901, *et seq.* .................................................3, 5, 6, 7

Or. Rev. Stat. Ann. § 646.608 ..........................................................................................3, 10

Or. Rev. Stat. Ann. § 646.638 ...............................................................................................10

**Other Authorities**

16 CFR § 233.1(b) .............................................................................................................8, 9

Fed. R. Civ. P. 8 .....................................................................................................................4

Fed. R. Civ. P. 9 .............................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .....................................................................................................4, 16

Or. Admin R. 137-020-0010 ................................................................................................10

**DEFENDANT SAFEWAY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT
Case No. 3:24-cv-06553-JSC**

## STATEMENT OF ISSUES TO BE DECIDED

1. Claims for fraud and violation of consumer-protection statutes can lie only if a reasonable consumer would be deceived by the representation at issue. Plaintiffs contend that they saw price displays communicating a member discount off the nonmember price, yet they contend that they interpreted those displays as offering a members-only sale from the item's "true ordinary price." Could a reasonable consumer be deceived by paying the advertised "Member Price" rather than the nonmember price?

2. Rule 9(b) requires plaintiffs alleging fraud-based claims to allege not only the who, what, when, and where of the at-issue representations, but also why they were false. Plaintiffs allege repeatedly that Safeway's posted nonmember prices represent "false reference prices," but offer no factual allegations explaining why they were false. Do Plaintiffs' claims meet Rule 9(b)'s heightened pleading standard?

3. California does not recognize a cause of action for unjust enrichment. Instead, a party can recover equitable restitution only if some underlying wrong committed by the defendant would justify that recovery. Plaintiffs allege nothing suggesting that Safeway engaged in any wrongful conduct. Can Plaintiffs' unjust enrichment claim survive?

4. The California Commercial Code requires that buyers of goods provide notice of their claims before pursuing them in court. Plaintiffs do not (and cannot) allege that they provided Safeway with pre-suit notice of their breach-of-contract claim. Can Plaintiffs pursue their claims?

5. A plaintiff only has injunctive relief when she faces an actual and imminent threat of future harm. Plaintiffs now claim to understand how to read Safeway's price displays. Do they face an actual and imminent risk of being deceived by these price displays in the future?

6. Equitable relief like restitution and an injunction is available only when the plaintiff lacks an adequate remedy at law. Plaintiffs admit that they have adequate legal remedies. Can their equitable-relief claims survive?

I.    **INTRODUCTION**

Nearly every shopper knows that receiving a discount is a benefit, not an injury.  Plaintiffs are the rare exceptions.  They complain not that they were charged more than they expected, but instead that, as members of Safeway's rewards program, Safeway for U, they paid *less than* the price charged to nonmembers.

This case is readily distinguishable from the hundreds of other "fake sales" cases that have been filed over the last decade, because it does not involve any "sale," or any former price (such as an "original" price).  Instead, Safeway simply told Safeway for U members that they could pay a lower "Member Price" as a benefit of their membership.  Plaintiffs complain that the lower prices that they paid for wine represent "fabricated discounts that never end"—*i.e.*, that Safeway offered the wine they purchased at a member discount *too frequently*.  *See* SAC ¶ 6 (heading).  Critically, however, Plaintiffs do not explain why a member-exclusive discount is deceptive.  It is not.

While Plaintiffs chose to amend their Complaint rather than oppose Safeway's previous motion to dismiss, their SAC (like the interim First Amended Complaint) merely replicates the original complaint's deficient and conclusory arguments.  Reasonable consumers would not interpret the "Member Price" as anything other than a price offered to members.  Similarly, the fact that the price displays say that a "Member Price" is valid "Thru" a certain date does not mean anything other than just that: the offered price will be valid through the listed date.  This common, small-print notation—used by most grocery stores to promote accurate updates to price displays and reassure customers that the listed price will remain in effect *until* the specified date —does not say anything as to what happens *after* that date.  It cannot be reasonably interpreted to suggest that members would pay the non-member price after a given date.

Plaintiffs' breach-of-contract claim also fails for lack of notice, and because a discount from a "former price" was not part of any contract.  Additionally, their unjust-enrichment claim fails because California law recognizes no such claim, and at any rate, Plaintiffs do not allege anything "unjust" about giving discounts to members who signed up to receive discounts.

Plaintiffs' prayers for equitable relief should also be dismissed.  Plaintiffs lack standing to seek injunctive relief because they do not face any risk of future injury, and instead now purport to understand how to read the challenged price displays.  Plaintiffs also fail to explain why the damages they seek would

1

1   not provide an adequate remedy at law, as required to seek injunctive relief or restitution.

2       Accordingly, to the extent the Court does not grant Safeway's concurrently-filed Motion to

3   Compel Arbitration, it should dismiss the SAC in its entirety.

4   **II.    SUMMARY OF RELEVANT FACTS**

5       **A.    Defendant Safeway, Inc.**

6       Safeway is among the country's best-known grocery store brands.  Safeway offers a rewards

7   program called Safeway for U, which offers discounts to customers shopping online and in-person at

8   Safeway stores.  *See* SAC ¶¶ 1, 19.

9       The SAC alleges that Safeway promotes the Safeway for U program as providing "exclusive

10  access to offers on items & brands you love most," among other perks.  *Id.* ¶ 20.  "Members are eligible

11  to receive purported price discounts on products available for purchases in-store and online as long as they

12  use their account number at checkout."  *Id.* ¶ 21.  Plaintiffs appear to recognize that for a non-member to

13  receive the "Member Price," they would need to create an account and join the program.  *Id.* ¶ 22.

14      This case concerns Safeway's pricing for wine, which Plaintiffs allege is advertised using two

15  prices:  a higher non-member price (or "reference price"), and a lower "Member Price" (which they also

16  call a "members-only price," *see id.* ¶ 83).  The SAC does not challenge (let alone mention) the third price

17  on the placard (shown below), which reflects a further discount for members who buy a "Six-Pack."

18
19      
20
21
22
23
24
25
26
27
28

**DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**
**Case No. 3:24-cv-06553-JSC**

1

**B.    What Is in the SAC**

2    Plaintiffs are members of Safeway for U ("Members"), who each have bought several bottles of

3   wine from Safeway stores using their membership perks—all at discounted "Member Prices."  Plaintiffs

4   were allegedly confronted with price displays "substantially similar" to those shown above every time

5   they visited a Safeway store.  They allegedly interpreted these displays to mean that the wine "ordinarily"

6   sells at the higher non-member price, but that Safeway was offering an unusual, "time-limited discount

7   promotion for Safeway Rewards members."  SAC ¶¶ 45, 46.

8    Plaintiffs purport to bring claims on behalf of customers who (1) are members of Safeway's for U

9   program, (2) bought wine at a Safeway store using their Safeway for U account, and (3) paid a discounted

10   "members-only price."  *Id.* ¶ 83.   On behalf of a nationwide class and California sub-class, all Plaintiffs

11   bring claims under California's False Advertising Law (FAL), Unfair Competition Law (UCL), and

12   Consumers Legal Remedies Act (CLRA).   On behalf of California and Oregon sub-classes, Plaintiffs

13   (including Lundt, of the District of Columbia) also purport to bring claims for common-law breach of

14   contract, quasi-contract/unjust enrichment, and fraud; they do not specify which state's laws they claim

15   govern these claims.  Plaintiffs Horner, Brouhard, McCarty, and Beam additionally purport to bring claims

16   under the Oregon Unlawful Trade Practices Act (UTPA), on behalf of an Oregon sub-class. Additionally,

17   Plaintiff Lundt purports to bring a claim under the District of Columbia Consumer Protection Procedures

18   Act (CPPA), on behalf of a District of Columbia sub-class.

19

**C.    What Is Not in the SAC**

20    Plaintiffs acknowledge that they received a significant benefit from being Safeway for U members:

21   discounted prices.  They do not claim that they would have paid the higher non-member price but for their

22   enrollment in Safeway for U.

23    Even after amending their complaint, Plaintiffs do not identify the dates or locations of their

24   purchases, or what the pricing displays said on those dates.  Plaintiffs do not identify a single word that

25   they claim deceived them, including the allegedly misleading higher price or "Member Price."  Instead,

26   they vaguely claim to have been deceived by signage "similar" to the photographs above.  While Plaintiffs

27   claim to have interpreted this signage as offering a "time-limited discount" off the wine's "true, ordinary"

28   prices, they do not identify any words that led them to this interpretation.  The SAC alleges that the

1   inconspicuous "Thru" date at the very bottom of the price display reflects an "end date" for the purported

2   sale, and that reasonable consumers would expect Safeway to charge members the non-member price after

3   that date. *Id.* ¶¶ 2–5, 33, 35.   Crucially, Plaintiffs do not claim to have even noticed this date, much less

4   interpreted it this way or relied on such interpretation.

5          Similarly, while Plaintiffs characterize the "Member Price" as a "market price" or "market value,"

6   Plaintiffs do not they cite any representation by Safeway characterizing the "Member Price" as a "market

7   price" or otherwise promising that Member Prices are cheaper than other retailers' prices.  Plaintiffs never

8   actually claim to have interpreted it this way. SAC ¶¶ 6, 24, 30, 37.  The only support for Plaintiffs' theory

9   that the wine is not "worth" the "Member Price" is that discount retailers like Walmart offered a single

10  label of wine (750ml bottle of Meiomi Pinot Noir Red Wine—which Plaintiffs do not claim to have

11  bought) for less than Safeway's Member price on a single day in December 2024, months after Plaintiffs

12  initiated this lawsuit. *Id.* ¶ 37.

13  ### III.    APPLICABLE STANDARD

14         To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual

15  matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

16  662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Rule 8(a)(2) ...

17  requires a showing, rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556

18  n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint,

19  it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the

20  nature of the claim, but also 'grounds' on which the claim rests." *Id.*

21         Additionally, where, as here, the claims are "grounded in fraud," the pleading must satisfy Rule

22  9(b)'s particularity requirement. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009).  In

23  addition to identifying "the who, what, when, where, and how of the misconduct charged," Plaintiffs must

24  explain "what is false or misleading about [the purportedly fraudulent] statement, and why it is false."

25  *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal

26  quotations and citations omitted).  Rule 9(b) serves not only to give notice to the defendant of the specific

27  fraudulent conduct against which it must defend, but also:

28  //

> [T]o deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (internal citations and quotations omitted). In short, Rule 9 "is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011); *see also Strum v. Exxon Co., U.S.A.,* 15 F.3d 327, 331 (4th Cir. 1994) (litigants cannot "simply cry fraud" to satisfy Rule 9(b)).

## IV.    ARGUMENT

### A.    Plaintiffs' Statutory Claims, Fraud Claim, and Unjust Enrichment Claim Fail Because the SAC Pleads No Facts Suggesting Fraudulent Conduct

All of Plaintiffs' claims are subject to Rule 9(b)'s heightened pleading standard because they allege "a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *see also, e.g., Moody v. Hot Topic, Inc.,* No. EDCV230447JGBSPX, 2023 WL 9511159, at *9 (C.D. Cal. Nov. 15, 2023) ("Plaintiffs' breach of contract and warranty claims are all based on allegations that Defendant made false or misleading statements about its products' market value and purported discounts ... These claims are based on the same allegations as Plaintiffs' FAL, UCL, CLRA, intentional misrepresentation, and negligent misrepresentation claims, which are subject to the heightened pleading standard of Rule 9(b)."); *Prescott v. Reckitt Benckiser LLC,* No. 20-cv-02101-BLF, 2020 WL 7075624, at *4 (N.D. Cal. Dec. 3, 2020) ("[W]here a [contract] claim is based on the same allegedly misleading advertising giving rise to UCL and CLRA claims, the [contract] claim also sounds in fraud and is subject to Rule 9(b)'s heightened pleading standards.") (citations omitted); *Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017) ("Because the unjust enrichment claim is based on fraud, it too is subject to Rule 9(b)"); *Jefferson v. Collins,* 905 F.Supp.2d 269, 289 (D.D.C.2012); *Witherspoon v. Philip Morris, Inc.*, 964 F.Supp. 455, 464 (D.D.C.1997) ("allegations supporting the [CPPA] claim must be pleaded with particularity because they are akin to allegations of fraud.").

The SAC fails this heightened standard as it omits basic facts necessary to identify Plaintiffs'
purchases, including when or where they took place, or the specific statements they relied on. Moreover,
the SAC offers no factual allegations—required under both Rule 9(b) and the general pleading standard—
suggesting that any reasonable consumer could be deceived.

### 1.    Plaintiffs Fail to Plead the Circumstances of Their Purchases with Requisite Particularity

Rule 9 requires Plaintiffs to allege "the who, what, when, where, and how of the misconduct
charged." *Kearns,* 567 F.3d at 1124 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.
2003)). Here, Plaintiffs do not allege any of these details, including the stores where they made their
alleged purchases, what they bought, the dates of their purchases, what the allegedly deceptive pricing
displays actually said, or which statements they relied on. This is insufficient. *Alan Neuman Prods., Inc.
v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1988) (requiring "time, place and specific content of the
false representations"); *Jefferson*, 905 F. Supp. 2d at 289–90 ("to satisfy Rule 9(b), 'the pleader [must]…
state the time, place and content of the false misrepresentations'").

Plaintiffs cannot satisfy their pleading burden simply by identifying a type of wine they bought at
some point during the class period and claiming it was advertised with "a time-limited temporary sale
price." SAC ¶¶ 45, 50, 55, 60, 65, 70, 75. Instead, they are required to specify what precise statements
led them to interpret the price in this way. Because Plaintiffs have not specified, *inter alia*, which
statements they relied on, "when [they were] exposed" to them, and "which ones [they] found material,"
they cannot satisfy Rule 9(b). *Kearns*, 567 F.3d at 1126; *see also Jefferson,* 905 F. Supp. 2d at 290 (finding
"the plaintiffs' fraud-based claims under the D.C. Consumer Protection Act fail to satisfy Rule 9(b)'s
particularity requirement" where the complaint "fails to plead when and where the [allegedly deceptive]
statement was made, who made it, and what the plaintiffs gave up or retained as a consequence of the
fraud.").

Moreover, to state a UCL, FAL, or CLRA claim, Plaintiffs cannot challenge the "Member Price"
or "Thru" date without claiming they actually relied on them. *Haskins v. Symantec Corp.*, 2016 WL
3391237, at *1 (9th Cir. June 20, 2016). Because the "complaint did not allege that [Plaintiffs] read and
relied on a specific misrepresentation by [the defendant], [they] failed to plead [their] fraud claims with

particularity as required by Rule 9(b)." *Id.* at 339.

Thus, this case is on all fours with *Azimpour v. Sears, Roebuck & Co.,* 2016 WL 7626188, at *7 (S.D. Cal, Oct. 17, 2016), where the court found deficient the plaintiff's claim to have "observed merchandise for which 'regular' prices were listed alongside 'discounted' prices in larger, bold fonts." As the court explained, "Without more, Defendant plainly cannot verify Plaintiff's allegations of fraud as it applies to its sale of the pillow, much less any other product." *Id.* Moreover, "[t]he details of the 'pricing information' that *Plaintiff[s] saw* and relied on are peculiarly in [their] control." *Id.*; *see also Rael v. N.Y. & Co., Inc.*, 2016 WL 7655247, at *6 (S.D. Cal. Dec. 28, 2016) ("Nowhere does Plaintiff give details as to what signs she relied on, what the signs said or looked like, or where they were located.").

### 2. Reasonable Consumers Would Not Interpret "Member Prices" as Temporary Sales from "Ordinary" Prices

Even if the Court were to assume that Plaintiffs relied on the term "Member Prices" and the fine-print "Thru" date—something they never allege—their proffered interpretation is unreasonable and implausible.

Dismissal is appropriate when, as here, a court can conclude as a matter of law that an advertisement is not likely to deceive reasonable consumers. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)); *Whiting v. AARP*, 701 F. Supp. 2d 21, 29 (D.D.C. 2010), *aff'd*, 637 F.3d 355 (D.C. Cir. 2011) (dismissing false advertising claim under the CPPA where marketing materials describing a medical plan as "an alternative plan that is not major medical plan" was not misleading as it would put a reasonable consumer on notice that the plan conferred "limited benefits").

Courts do not underestimate the reasonable consumer's intelligence. In *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870 (2017), for example, the plaintiff accused a clothing retailer of deceiving its customers by using its brand name in factory-outlet stores that, the plaintiff alleged, offered inferior merchandise rather than the same merchandise offered in its flagship stores. The court rejected that theory, stating that the alleged misrepresentation at issue (*i.e.*, selling items in a "Factory" store) did not say what the plaintiffs claimed it meant. *Id.* at 877 ("[T]he SAC alleges no statement by Gap about the quality of factory store merchandise or that it was previously for sale in traditional Gap-owned stores"). The Court

further noted that "a consumer for whom the retail history of factory store items is material can ask [store] employees about this," and "[a] reasonable consumer would also inspect the quality of factory store clothing items." *Id.* at 877. Here, too, consumers could have asked sales associates whether the promotion was a special, short-term offer, or how often the wines are offered to Members at full price.

In *Seegert v. Luxottica Retail North America, Inc.*, 2018 WL 1214888, at *3 (S.D. Cal. Feb. 23, 2018), the Southern District of California rejected the plaintiffs' attempt to state a "fake sale" claim based on a promotion that was not a traditional "sale" at all. There, the plaintiff claimed that a sign advertising "40% Off Lenses With Frame Purchase" as deceptive because the lenses were never offered or sold at the regular price. The Court found that the plaintiff's theory failed under "even a dim-witted consumer standard" because "the overwhelming proportion of consumers would construe this advertisement to mean that by purchasing frames the consumer would receive 40% off the list or regular price of the lenses." *Id.* at *2. Simply put, when reasonable consumers would not interpret a promotion as reflecting a former price, the plaintiff "cannot meet her burden by alleging in conclusory fashion that the advertisement is deceptive because the lenses were not sold at list price." *Id.* at *3.

Here, reasonable consumers would not interpret Safeway's "Member Price" as a discount from a higher price normally charged to members. Instead, the comparison is simple: nonmembers pay the higher reference price; members pay the lower "Member Price."[1] There is nothing deceptive about this. Indeed, even under the Federal Trade Commission's (FTC) Guides Against Deceptive Pricing, a former price is not deceptive if it was "openly and actively offered for sale." 16 CFR § 233.1(b). Here, Safeway's wine *is* "openly and actively" "offered to the public on a regular basis" at the non-member price—which Plaintiffs concede is the price that any member of the public would pay if they did not proactively sign up for the program. 16 CFR § 233.1(b). As a result, that price provides "a legitimate basis for the advertising of a price comparison." *Id.* There is nothing deceptive about incentivizing membership in Safeway for U by advertising savings as compared to the prices non-members would pay.

---

[1] Likely for this reason, Plaintiffs do not pursue claims under California's "Former Price Law," Cal. Bus. & Prof. § 17501. *Cf. Hermanson v. Lenovo Grp. Ltd.*, 2024 WL 819566, at *3 (N.D. Cal. Feb. 27, 2024) (dismissing Section 17501 claim because "Est Value" is not a former price).

Although Plaintiffs' SAC adds new allegations that Safeway for U is easy to join, this is a non-sequitur that says nothing as to how members would interpret Safeway's Member Prices. SAC ¶ 22. Indeed, this claim tacitly concedes that member prices *are* exclusive for Safeway members. The ease of membership does not change that fact—indeed, anyone who has already joined would understand the process of joining. If an easy sign-up process somehow made the member savings less attractive (which it should not), existing members (who necessarily understand the sign-up process) can adjust their excitement accordingly. And to the extent Plaintiffs argue that the nonmember price is deceptive because most people would rather sign up for Safeway for U than pay the higher reference price, the FTC Guidance is again telling. Just as the FTC recognizes that "A former price is not necessarily fictitious merely because no sales at the advertised price were made" (16 CFR § 233.1(b)), a nonmember price is not misleading just because customers would rather save money by signing up, when given the option.

Plaintiffs cannot save their claim by pointing to the inconspicuously "Thru" price that they never claim to have even seen. This price talks about what happens "through" (i.e., until) a certain date. It says nothing about what happens *after* that date. And it certainly does not represent that Members would pay the full price after that date—an assumption that would be especially unreasonable here, given Plaintiffs' claim that the entire wine section was on sale every time they visited it. In fact, the purpose of the "Thru" price is not to deceive consumers with false urgency, but to provide transparency, assuring customers that the listed price will remain in effect *until* the specified date. This allows shoppers to plan and comparison shop with confidence, knowing that the price will not unexpectedly increase before that date.

At the same time, Plaintiffs allege no facts supporting their theory that "Safeway *never* sells its Rewards members wine at the reference prices." SAC ¶ 34. Courts have repeatedly dismissed similar conclusory allegations under Rule 9(b). *See, e.g.*, *Sperling v. DSWC, Inc.*, 699 F. App'x 654, 655 (9th Cir. 2017); *Lisner v. Sparc Grp. LLC*, 2021 WL 6284158, at *5 (C.D. Cal. Dec. 29, 2021).

### B.    Safeway Never Represented Its Member Prices Were Lower than Discount Retailers, But Regardless, Charging Higher Prices Is Not Unfair or Deceptive

Plaintiffs' SAC also adds several conclusory allegations about how Safeway's "Member Prices" are higher than the "market rates" for the same wine. There are three problems with this theory: ***First***, Plaintiffs do not claim to have even read the term "Member Price," much less interpreted it that way.

***Second***, Plaintiffs do not identify any representation by Safeway to suggest to consumers that "Member Prices" are lower than other retailers' prices. Without any such representation, there is nothing misleading, unfair, or illegal about charging more than other retailers for the same item.

***Finally***, Plaintiffs base this entire theory on the fact that their lawyers found a single bottle of wine, which none of Plaintiffs purchased, that was offered for less at Walmart and Total Wine & More in December 2024—i.e., after Plaintiffs asked to amend their original Complaint. Discount retailers like Walmart do not dictate "market prices," but regardless, this one cherry-picked example says nothing of Plaintiffs' purchases.

### C.   Oregon's Pricing Regulations Do Not Help Plaintiffs Horner, Brouhard, McCarty, and Beam State a UTPA Claim

Plaintiffs Horner, Brouhard, McCarty, and Beam's UTPA claim fails for an additional reason: they do not plausibly allege that Safeway engaged in any "method, act or practice declared unlawful under ORS 646.608." Or. Rev. Stat. Ann. § 646.638. Plaintiffs cite at length from Oregon's pricing regulations for former pricing, but because Plaintiffs do not allege facts to suggest former prices, these authorities do not apply.

Each of the regulations cited is inapposite. **ORS 646.608(1)(j)** prohibits making "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." Relatedly, Plaintiffs claim that Safeway violated **ORS 646.608(1)(j), (1)(s), (1)(u), and (4)** by using "false reference prices." And **OAR 137-020-0010** applies only if a retailer advertises a reference price that it (a) did not actually offer in good faith in the regular course of business, (b) will not offer in the future, or (c) is not offered by an identifiable competitor.

Here, Safeway misrepresents nothing. It offers a discount for Members and makes plain the reason for the discount: Safeway for U membership. That fact, which the SAC implicitly acknowledges, negates any suggestion of a misleading representation of fact or of a false reference price, so the various subsections of ORS 646.608 do not apply. And because Plaintiffs never allege that nonmembers would not pay the higher reference price but for their membership perks, Plaintiffs' allegations cannot support a violation of OAR 137-020-0010, either. *See also* Section IV(A)(2), *supra*.

//

### D.    Plaintiffs Have Not Stated a Claim for Unjust Enrichment

Plaintiffs' unjust-enrichment (*i.e.*, quasi-contract) claim for fails for a simple reason:  There is no such thing.  "Unjust enrichment is not a cause of action, [ ] or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (internal quotation marks omitted).  "It is synonymous with restitution." *Id.*   If Plaintiff's underlying causes of action fail, a "claim for unjust enrichment cannot stand alone as an independent claim for relief." *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *5 (N.D. Cal. Dec. 17, 2009) (citing *Jogani v. Superior Ct.*, 165 Cal. App. 4th 901, 911 (2008)); *accord Ebner v. Fresh, Inc.*, 818 F.3d 799, 808 (9th Cir. 2016) (affirming dismissal of unjust enrichment claim when underlying claims failed).[2]

As shown, Plaintiffs fail to plead facts suggesting any fraudulent conduct that could trigger a right to restitution.  With no viable underlying cause of action, Plaintiffs' plea for unjust enrichment fails. *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489, 975 (9th Cir. 2009) (dismissing unjust-enrichment claim sounding in fraud because if the plaintiffs' fraud claims fail, they have "no basis for [their] unjust enrichment claim.").

Plaintiffs' unjust-enrichment claim also fails because "a plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020); *see also Rutherford Holdings, LLC v. Plaza Del Rey,* 223 Cal. App. 4th 221, 231 (2014) ("[A]n action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter.").  Here, Plaintiffs allege that they "entered into contracts when they purchased wine from Safeway."  SAC ¶ 134.  They have

---

[2] To the extent Plaintiffs purport to bring their common law claims under the laws of any state other than California's, they have failed to state a claim. *See, e.g.*, *Brown v. Starbucks Corp.*, No. 18cv2286 JM (WVG), 2019 WL 4183936, at *7–8 (S.D. Cal. Sept. 3, 2019) ("Neither Starbucks nor the court can determine whether Brown alleges California law applies to the claims of out-of-state putative class members, or if she alleges the laws of various unidentified states apply to these putative class members' claims."); *Augustine v. Talking Rain Bev. Co.*, 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019) ("Plaintiffs' failure to identify which state laws govern their common law claims means the claims brought on behalf of the nationwide class have not been adequately pled.").

**DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**
**Case No. 3:24-cv-06553-JSC**

1   not pled that this contract is unenforceable or invalid.  Plaintiffs' unjust-enrichment claim is therefore

2   barred.  *See, e.g.*, *Vizcarra v. Michaels Stores, Inc.*, 2024 WL 64747, at *9 (N.D. Cal., Jan. 5, 2024)

3   (dismissing unjust-enrichment claim alleging that "'false and misleading advertising' caused her to

4   purchase [defendant's] products and 'pay a price premium" where the transaction formed a valid contract);

5   *Klein v. Chevron U.S.A., Inc*., 202 Cal. App. 4th 1342, 1388–90 (2012), *as modified on denial of reh'g*

6   (Feb. 24, 2012) (finding plaintiffs are "precluded from asserting a quasi-contract" where "plaintiffs'

7   breach of contract claim pleaded the existence of an enforceable agreement").

8           **E.      The Court Should Also Dismiss Plaintiffs' Contract Claim**

9           Plaintiffs' breach-of-contract claims fail both procedurally (because Plaintiffs failed to provide the

10  required notice) and substantively (because Plaintiffs misconstrue the contract).

11                  *1.      Plaintiffs Failed to Provide the Notice that California Law Requires*

12          The California Commercial Code prohibits buyers from suing for breach of contract unless they

13  first provide notice of the alleged breach.  Cal. Com. Code § 2607(3)(A) ("The buyer must, within a

14  reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach

15  or be barred from any remedy").  The Commercial Code applies here because Plaintiffs allege contracts

16  for the sale of goods.  *See* Cal. Com. Code § 2102; SAC ¶ 134 (alleging contracts to buy wine).

17          California courts apply § 2607(3)(A)'s requirement to bar breach-of-contract actions when, as

18  here, the plaintiff fails to provide notice before the suit is filed.  The California Court of Appeals

19  recognizes that the notice requirement is "designed to allow the seller the opportunity to repair the

20  defective item, reduce damages, avoid defective products in the future, and negotiate settlements."

21  *Cardinal Health 301, Inc. v. Tyco Elecs. Corp*., 169 Cal. App. 4th 116, 135 (2008); *see also id.* ("To

22  recover on a breach of warranty claim, the buyer must, within a reasonable time after he or she discovers

23  or should have discovered any breach, notify the seller of any breach or be barred from any remedy").

24  The buyer has the burden of alleging and proving reasonable notice.  *Stearns v. Select Comfort Retail*

25  *Corp.,* 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010) (citation omitted).

26          The Ninth Circuit has affirmed that California law requires strict compliance with

27  § 2607(3)(A): "The purpose of giving notice of breach is to allow the breaching party to cure the breach

28  and thereby avoid the necessity of litigating the matter in court. . . This purpose would be completely

---

12

undermined if it could be satisfied with the giving of post-suit notice." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011); *see also S. Cal. Stroke Rehab. Assocs. v. Nautilus, Inc.*, 554 F. App'x 656, 656 (9th Cir. 2014) (the purpose of the statutory requirement is to give the defendant an "opportunity [to repair] the defective item, reduc[e] damages, avoid[] defective products in the future, and negotiat[e] settlements" (citations omitted)); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 929–30 (N.D. Cal. 2012).

Here, Plaintiffs claim they "provided Safeway with notice of this breach of contract by letter sent certified mail, return receipt requested, on September 17, 2024"—*i.e.*, the day before the Complaint was filed.  SAC ¶ 139.  This letter was not delivered until September 26, 2024—more than a week ***after*** the suit was filed.[3]  This does not satisfy Plaintiffs' burden to show that they gave Safeway a reasonable opportunity to cure any alleged breach before filing suit.  *Alvarez*, 656 F.3d at 932 (dismissing breach-of-contract claim with prejudice where notice was sent at the same time as the complaint).  Plaintiffs have not and cannot satisfy the Commercial Code's pre-suit notice requirement.  The Court should dismiss Plaintiffs' breach-of-contract claim with prejudice.

### 2.    Plaintiffs' Breach-of-Contract Claim Misconstrues the Alleged Contract

Even if Plaintiffs had provided notice, their claim would still fail.  Plaintiffs' description of the at-issue contract does not comport with their factual allegations.  Plaintiffs allege that their contracts "required that Safeway provide Plaintiffs … with wine products that have *a former price* … equal to the advertised regular prices."  SAC ¶ 115 (emphasis added).  But the SAC's photographed in-store price tags say nothing about "former" prices.  Instead, they depict a nonmember price and a "Member Price."  *Id.* ¶¶ 31–32.  The offer at issue is that members can purchase products at a lower price, and nonmembers at a higher price.  The offer says nothing about former prices, and Plaintiffs cannot pretend otherwise and imagine their way to a breach-of-contract claim.

//

---

[3] This Court may take judicial notice of the tracking number for the letter and the delivery date.  *See Evans v. DSW, Inc.*, No. CV 16-3791 JGB (SPX), 2017 WL 7058232, at *2, n.3 (C.D. Cal. Sept. 14, 2017) (taking judicial notice of the plaintiff's CLRA letter and the tracking information for that letter); *see also Collins v. Wal-Mart Stores, Inc.*, No. 3:23-CV-01368-RBM-DEB, 2024 WL 56993, at *5 (S.D. Cal. Jan. 4, 2024) (taking judicial notice of the date and existence of plaintiff's 2021 complaint and 2021 right-to-sue letter).

**DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**
**Case No. 3:24-cv-06553-JSC**

Nor can Plaintiffs base their contract claim on Safeway's alleged failure to deliver the promised "market value," as discussed in Section IV(B), *supra*.

**F.    The Court Should Dismiss or Strike Plaintiffs' Claims for Equitable Relief**

Here, Plaintiffs seeks several forms of equitable relief: restitution and injunctive relief under the UCL, FAL, CLRA, and UTPA, in addition to restitution under a standalone unjust-enrichment cause of action.  They also seek a legal remedy—damages—under their CLRA, UTPA, contract, and fraud clams.

Plaintiffs lack standing to seek injunctive relief, and also cannot seek equitable relief because they do not explain why their claim for damages would not provide an adequate remedy at law.

*1.    Plaintiffs Lack Article III Standing to Seek Injunctive Relief*

Plaintiffs must demonstrate constitutional standing separately for each form of relief requested.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000).  The three well-known "irreducible constitutional minim[a] of standing" are injury-in-fact, causation, and redressability.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Plaintiffs each bear the burden of demonstrating that their injury-in-fact is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  For injunctive relief, which is a prospective remedy, the threat of injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  Where standing is premised entirely on the threat of repeated injury, Plaintiffs must show "a sufficient likelihood that [they] will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Here, Plaintiffs do not risk any future injury.  Indeed, they claim that they "would not have purchased individual bottles of wine if [they] had known that [they were] not receiving time-limited savings off a former price."  SAC ¶¶ 47, 52, 57, 62, 67, 73, 77.  In light of this allegation, "Plaintiff[s] cannot plausibly allege [they] will purchase the Products in the future if labeled correctly." *Renn v Otay. Lakes Brewery, LLC*, No. 23CV1139-GPC(BLM), 2024 WL 331616, at *8 (S.D. Cal. Jan. 29, 2024); *Joslin v. Clif Bar & Co.*, Case No. 4:18-cv-04941-JSW, 2019 WL 5690632, at *4 (N.D. Cal. Aug. 26, 2019) ("If Plaintiffs do not want products that do not contain real white chocolate, the Court is hard pressed to see how Plaintiffs would be able to allege the requisite future harm.").  Now that they purportedly

understand that "Member Prices" are not time-limited discounts, there is no risk they will be deceived again.

Plaintiffs cannot manufacture standing by reciting that they "would buy member-priced wine from Safeway in the future, if [they] could trust that the advertised discounts were actual time-limited markdowns from true reference prices." SAC ¶¶ 48, 53, 58, 63, 68, 73, 78.   This allegation misses the point.  Now that Plaintiffs understand how the Safeway for U program works, and the meaning of the "Member Price" and "Thru" date, they know how to interpret the price displays in the future, and are not at risk of being deceived in the same way.  As the Seventh Circuit explained in *Camasta*, 761 F.3d at 741: because Plaintiffs are "now aware of [defendant's] sales practices, [they are] not likely to be harmed by the practices in the future."

Plaintiff may attempt to rely on *Davidson v. Kimberly-Clark Corp.*, but that case is distinguishable. 889 F.3d 956, 971 (9th Cir. 2018). There, the Ninth Circuit reiterated that injunctive relief is only appropriate where the plaintiff "adequately alleged that she faces an imminent or actual threat of future harm caused by [the defendant's] allegedly false advertising." *Id*. at 970.  Recognizing the facts posed a "close question,"—the Ninth Circuit held that a plaintiff had standing to seek injunctive relief, where she could not easily verify whether the defendant's previous misrepresentations—about the "flushable" nature of their wipes—had been cured without first purchasing the product.  That is, "*Davidson* involved situations where the plaintiff could not easily discover whether a previous misrepresentation had been cured without first buying the product at issue." *Cordes v. Boulder Brands USA, Inc*., No. CV 18-6534 PSG (JCX), 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018).  The fact that this was a "close question" implied "that standing was unlikely in cases where the threat of future harm was weaker." *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1127 (S.D. Cal. 2021).

This case is nothing like *Davidson*.  The pricing history of any item is public knowledge, but Plaintiffs could also easily ask sales associates for more information if it was going to impact their purchasing decisions.  *Rubenstein*, 14 Cal. App. 5th at 880 ("A consumer who cared … [can ask] a sales associate.").  Similarly, to the extent Plaintiffs care about competitors' prices for the same wine (something they do not allege in the Complaint), they could easily look that up on their phones.  Because Plaintiffs now understand, and can easily verify, the challenged statements, they do not face any risk of future harm.

The Court should follow other decisions in this district which have refused to apply *Davidson* because the plaintiff had learned how to interpret the challenged label.  For example, in *Caldwell v. Nordic Nats., Inc.*, 709 F. Supp. 3d 889, 910 (N.D. Cal. 2024), an action alleging that manufacturer's "2X" omega-3 dietary supplement did not contain twice the amount of omega-3 as manufacturer's regular omega-3 product, the court held that the plaintiff lacked standing to seek injunctive relief because he now understood the purported truth about the product and therefore would not be deceived in the future.  Judge Chen explained:

> [A] foundational prerequisite of standing is that the plaintiff must face the threat of suffering similar harm in the future.  But here, Plaintiff is now aware that twice the omega as that in the regular Ultimate Omega product amounts to 2560 mg. As the Plaintiff is now armed with this information, it strains credibility to say that Plaintiff will purchase the Ultimate Omega 2X product again, which states that it contains 2150 mg of omega, while thinking the product contains double the amount of omega as the regular product. And armed with the current knowledge, Plaintiff can now take the step of comparing this product with the original product. It is difficult to reason around this aspect of Plaintiff's circumstances to find that Plaintiff might be injured again in a similar way in the future.

*Id*. at 910 (citation omitted); *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021) (plaintiff lacked standing to seek injunctive relief because she now understood how to interpret the challenged representation on the front of the package; citing cases).

### 2.    Plaintiffs' Claims for Equitable Relief Are Precluded Because Plaintiffs Never Allege That They Lack an Adequate Remedy at Law

This Court should also dismiss Plaintiffs' prayers for equitable relief for failing to plausibly explain why they lack an adequate remedy at law.[4]  It "is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (citation omitted); *see also Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022); *In re Apple Processor Litig.*, No. 22-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) (dismissing injunctive relief and restitution).

---

[4] When a cause of action allows for multiple forms of relief, and one such form of relief is barred as a matter of law, a court may dismiss or strike that prayer for relief under Rule 12(b)(6).  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).

1      Following the Ninth Circuit's decisions in *Sonner*, "a plaintiff must allege some facts suggesting

2   that damages are insufficient to make them whole when seeking equitable relief." *Easton v. Wells Fargo*

3   *& Co.*, 2022 WL 17886002, at *3 (C.D. Cal. Dec. 6, 2022) (internal quotation marks omitted); *see*

4   *also Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *2 (9th Cir. Jan. 17, 2024) (holding that the plaintiff

5   "fails to state a claim for retrospective equitable relief [under UTPA], because her complaint contains no

6   allegations as to why she lacks an adequate remedy at law for her disgorgement and restitution

7   claims.");[5] *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1122 (C.D. Cal. 2021) ("under *Sonner*,

8   Plaintiffs must allege that they lack an adequate remedy at law to seek injunctive relief;" collecting cases).

9      While the SAC asserts that there is "no adequate remedy at law," it does not answer the question

10   of why damages would not provide an adequate remedy.  SAC ¶¶ 80–82.  For example, Plaintiffs' fear of

11   losing on their damages claim, or winning less than they otherwise could, does not demonstrate the lack

12   of an adequate remedy at law.  As this Court recognized in *Moss v. Infinity Ins. Co.*, "[w]here, as here, a

13   plaintiff can seek money damages if she prevails on claims for breach of contract . . . she has an adequate

14   remedy at law"—"even if" the plaintiff's claims for equitable relief "ultimately fail."  197 F. Supp. 3d

15   1191, 1203 (N.D. Cal. 2016) (quoting *Rhynes v. Stryker Corp.,* 2011 WL 2149095, at *4 (N.D. Cal. May

16   31, 2011) ("Plaintiffs' argument that they will have no adequate remedy at law if their other claims fail is

17   unavailing.  Where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable

18   relief is unavailable."); *Mullins v. Premier Nutrition Corp.*, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23,

19   2018), *aff'd sub nom. Sonner*, 962 F.3d 1072 ("In the Ninth Circuit, the relevant test is whether an adequate

20   damages remedy is available, not . . . whether she will be successful in that pursuit.").

21      Nor can Plaintiffs plead equitable relief "in the alternative" based on the fact that legal remedies

22   "are of as yet uncertain."  SAC ¶ 82.  Pleading claims "in the alternative" does not relieve Plaintiffs of the

23   adequate-remedy requirement.  *See, e.g., Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 840 (E.D. Cal.

24   2024); *Scheibe v. Esupplements, LLC*, 681 F. Supp. 3d 1101, 1110 (S.D. Cal. 2023); *In re Intel Corp. CPU*

25

26   [5] Safeway respectfully suggests that the Court in *Clark* erred in allowing the plaintiff's claim for injunctive
relief to proceed.  *See, e.g. In re Apple Processor Litig.*, 2023 WL 5950622, at *2; *Philips v. Ford Motor*

27   *Co.*, 726 F. App'x 609, 609 (9th Cir. 2018); *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3

28   (N.D. Cal. Oct. 13, 2020).

*Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2021 WL 1198299, at *11 (D. Or. Mar. 29, 2021), *aff'd*, 2023 WL 7211394 (9th Cir. Nov. 2, 2023) (dismissing unjust-enrichment claim pled "in the alternative" where "[p]laintiffs ha[d] not alleged, even in the alternative, that they do not have adequate legal remedies").

Plaintiffs' claims for injunctive relief and restitution should therefore be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims in their entirety.


Dated:  April 10, 2025                                    Respectfully submitted,

                                                         *s/ Meegan B. Brooks*
                                                         STEPHANIE SHERIDAN (CA 135910)
                                                         MEEGAN B. BROOKS (CA 298570)
                                                         NICOLETTE SHAMSIAN (CA 341466)
                                                         Benesch, Friedlander, Coplan & Aronoff LLP

                                                         Attorneys for Defendant Safeway, Inc.