Stephanie Sheridan (CA 135910)
Meegan B. Brooks (CA 298570)
Nicolette Shamsian (CA 341466)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
ssheridan@beneschlaw.com
mbrooks@beneschlaw.com
nshamsian@beneschlaw.com

Attorneys for Defendant Safeway, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

MICHAEL TEMPEST, LADIAMOND HARVEY, SARAH MCGREGOR HORNER, and BRIONNA BROUHARD, KERRY MCCARTY, HILLARY BEAM, and CHRISTOPHER LUNDT, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SAFEWAY, INC.,

Defendants.

Case No. 3:24-cv-06553-JSC

**DEFENDANT SAFEWAY, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Date: June 26, 2025
Time: 10:00 a.m.
Judge: Hon. Jaqueline Scott Corley

# TABLES OF CONTENTS


I. Introduction .......... 1

II. Argument .......... 2

A. Plaintiffs Agreed to Arbitration Pursuant to Albertson's Terms of Use. .......... 2

1. Plaintiffs Do Not Rebut Safeway's Evidence that they Each Received the Notice Email .......... 2

2. The Notice Email Provided Reasonably Conspicuous Notice of the Arbitration Agreement. .......... 3

3. Plaintiffs Do Not Dispute that (1) the Notice Email Said the Updated Terms Would Govern Future Purchases; (2) that they Continued Shopping with Safeway After the Email Notice Was Sent, or (3) that they Failed to Timely Opt-Out. .......... 5

4. Safeway Properly Modified its Terms by Email. .......... 6

B. The Arbitration Agreement is not Invalid Under *McGill*. .......... 8

C. The Arbitration Agreement is not Unconscionable. .......... 9

III. Conclusion .......... 12

## TABLES OF AUTHORITIES

**Cases**

*Adibzadeh v. Best Buy, Co. Inc.*, No. 20-CV-06257-JSW, 2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) .......... 7

*Bennett v. T-Mobile USA, Inc.*, 2024 WL 229580 (W.D. Wash. Jan. 22, 2024) .......... 3

*Bright v. Am. Home Shield Corp.*, No. 220CV02079KJMCKD, 2022 WL 1626714 (E.D. Cal. May 23, 2022) .......... 14

*Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002) .......... 12

*Collins v. Diamond Pet Food Processors of California, LLC*, No. 2:13-CV-00113-MCE, 2013 WL 1791926 (E.D. Cal. Apr. 26, 2013) .......... 13

*Crawford v. Beachbody, LLC,* 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) .......... 3

*Crosby v. Amazon.com Inc.*, 2021 WL 3185091 (C.D. Cal. Apr. 19, 2021) .......... 11

*DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148 (9th Cir. 2021) .......... 10

*Dvorsky v. Axis Glob. Sys., LLC*, No. CV 17-422 DMG (AJWX), 2017 WL 7079459 (C.D. Cal. June 15, 2017) .......... 11

*Ehrmantraut v. Safeway Inc.*, 732 F. Supp. 3d 1030 (D. Ariz. 2024) .......... 9

*Falls v. Soulbound Studios, LLC*, No. 221CV00961SVWJPR, 2021 WL 4295137 (C.D. Cal. July 6, 2021) .......... 11

*Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) .......... 4

*Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024) .......... 6, 7

*Harbers v. Eddie Bauer*, *LLC*, 2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) .......... 3

*Hill v. BBVA USA*, 2021 WL 2206477 (S.D. Cal. June 1, 2021) .......... 11

*Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535 (9th Cir. 2021) .......... 10

*In re Facebook Biometric Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 4, 5

*Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023) .......... 5

*Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112 (S.D. Cal. 2024) .......... 12

*Magill v. Wells Fargo Bank*, 2021 WL 6199649 (N.D. Cal. June 25, 2021) .......... 10

*Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890 (C.D. Cal. 2020) .......... 4, 11

*Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016) .......... 12

*Motown Record Corp. v. Brockert*, 160 Cal. App. 3d 123 (1984) .......... 8

*Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 16 Cal. Rptr. 3d 296 (2004) .......... 14

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023) .......... 6

*PMC v. Porthole Yachts, Ltd.*, 65 Cal. App. 4th 882 (1998) .......... 8

*Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, P.3d 520 (2024) .......... 13

*Rubio v. Aarons LLC*, No. 1:24-CV-00526-KES-BAM, 2024 WL 4904512 (E.D. Cal. Nov. 27, 2024) .......... 12

*S.S. by & through Stern v. Peloton Interactive*, Inc., 566 F. Supp. 3d 1019 (S.D. Cal. 2021) .......... 4

*Sadlock v. Walt Disney Co.*, 2023 WL 4869245 (N.D. Cal. July 31, 2023) .......... 5, 7, 8, 9

*Denson v. Keplr Vision, LLC*, No. 3:20-CV-2228-L-BGS, 2021 WL 3419237 (S.D. Cal. Aug. 5, 2021) .......... 14

*Towns v. W. Creek Fin., Inc.*, No. 2:22-CV-01757-DJC-AC, 2023 WL 7490007 (E.D. Cal. Nov. 13, 2023) .......... 6

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, 2016 WL 1251008 (C.D. Cal. Mar. 25, 2016) .......... 3

*Webber v. Uber Techs., Inc.*, 2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) .......... 5

*Zaimi v. Neiman Marcus Grp.*, LLC, 2022 WL 19569536 (C.D. Cal. Aug. 31, 2022) .......... 7, 11

## I. INTRODUCTION

The facts here are simple: Plaintiffs opted into Safeway for U to enjoy the exact benefits they challenge in the present case: discounted pricing. Safeway/Albertsons then updated its Terms of Use ("Terms") and sent an email to each Plaintiff with a clear-cut subject line explaining, "We've Updated Our Terms of Use"; the body of the email explained that the updated Terms "are effective from May 6, 2024 for our continuing customers," and "contain important information about your relationship with us, including that disputes between us will be arbitrated, instead of class actions or jury trials." The updated Terms make clear that "Your continued access to or use of your Account or the Services constitutes your acceptance of the current Terms."

Plaintiffs each agreed to the updated Terms by continuing to use their loyalty benefits—many times over—and by failing to timely opt out of the updates. None of this is disputed. While Plaintiffs now say they do not recall receiving or reading the notice email—they provide no evidence to contradict Safeway's records showing the emails were delivered to the email addresses on file; the Declaration of Anya Verkhovskaya, who has no knowledge of Safeway's internal email systems or how they are used, certainly does not say this.[1] Plaintiffs do not claim that they believed there were no terms that governed their participation in Safeway for U, or that they expected that Safeway was not allowed to update its Terms (much less that any such expectation would be reasonable). They do not dispute that they gave their email addresses to Safeway to open their accounts but insist that it was unreasonable for Safeway to send program-related emails sent to those addresses. Numerous courts have rejected all of these arguments, and this Court should do the same. Email notice is a well-recognized and approved method to alert loyalty program members to updated terms. This is especially true where, as here, the Parties have an ongoing relationship.

Plaintiffs' other arguments also fail. The "*McGill* Rule" does not apply because Plaintiffs are not seeking relief that would benefit the general public. Given the delegation clause, the court need not

---

[1] The Verkhovskaya Decl. is cited to three times in the Opposition, without explanation as to who Verkhovskaya is, or why the Court should consider her baseless (and factually incorrect) theories about what Safeway might have the capability of doing.

address the merits of Plaintiffs' threadbare unconscionability arguments. Regardless, courts have consistently upheld arbitration agreements similar to Safeway's and Plaintiffs give no compelling reason for a different result here.

In sum, the Court should compel individual arbitration and stay all claims pending completion of the arbitration proceeding.

## II. ARGUMENT

### A. Plaintiffs Agreed to Arbitration Pursuant to Albertson's Terms of Use.

#### 1. Plaintiffs Do Not Rebut Safeway's Evidence that they Each Received the Notice Email

To effectuate an update to its Terms, Safeway sent an email (the "Email") to all of its members' email addresses on or about May 6, 2024, with the unambiguous ***subject line*** "We've Updated Our Terms of Use." Motion at 3-4; Michael Decl. ¶¶ 9–10, Ex. B-1 & B-2. The body of the Email plainly stated that Safeway's "Terms of Use contain important information about your relationship with us, including that disputes between us will be arbitrated, instead of class actions or jury trials." *Id*. The Email ended with the statement "We encourage you to regularly review our Terms of Use." *Id*. Immediately after that sentence, a large, hyperlinked box was placed that contained the statement "View Terms of Use." Clicking anywhere within the box automatically directed the user to the updated Terms. *Id*. None of the Emails were returned as undeliverable. Borup Decl. ¶¶ 3-7.[2]

In response, Plaintiffs attempt to hold Safeway to a far higher standard than any court ever has before, presenting an array of arguments to defeat notice and assent to the updated Terms: that they had no reason to expect an email from Safeway updating the Terms; that Safeway has not proved that Plaintiffs

---

[2] While Plaintiffs contend variously that they do not "remember receiving, seeing, opening, or reading" the May 6 email, Opp. at 3, none establish that they did not receive the email. The allegations that certain Plaintiffs (Brouhard, McCarty, and Tempest) could not locate the email months after it was sent, and that Plaintiff Beam doesn't recall her password for the email account she associated with her Safeway for U membership, do not establish that the May 6 Email was not appropriately delivered to each Plaintiff. Safeway cannot be held responsible for Plaintiffs' lack of care in reading/keeping their emails or keeping their information current. The fact that Plaintiffs Harvey, Horner, and Lundt each found the same email only confirms that Safeway sent the email to its Safeway for U members, as stated in its Motion.

use the email addresses that they provided to Safeway and to which the emails were sent; that Safeway has not proved its emails reached those inboxes; that if the emails did reach the inboxes, that Safeway has not proved Plaintiffs opened or read the email—or if they did open it and read it, whether Plaintiffs clicked on the link provided, and lastly, that Safeway has not proven it had the right to update the Terms of its programs at all. But each of these arguments have been raised and rejected in analogous cases by Courts in this Circuit and across the Country.

**2. The Notice Email Provided Reasonably Conspicuous Notice of the Arbitration Agreement.**

Plaintiffs never expressly deny receiving the Email. Their vague claim to not "remember[] receiving, seeing, opening, or reading Safeway's May 2024 email, or clicking the link" (Opp. at 3) is precisely "the type of 'convenient memory lapse' that is insufficient to generate a dispute of fact[ ]." *Bennett v. T-Mobile USA, Inc.*, 2024 WL 229580, at *12-13 (W.D. Wash. Jan. 22, 2024). It does not "constitute the unequivocal denial required to establish a genuine dispute of fact." *Id*. Where, as here, there is no evidence that an email was returned as undelivered, it is presumed delivered. *See, e.g. Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, 2016 WL 1251008, at *8-9 (C.D. Cal. Mar. 25, 2016).

And whether Plaintiffs opened or read the email is beside the point, as consumers cannot avoid contract terms simply by failing to read them. *Crawford v. Beachbody, LLC,* 2014 WL 6606563, at *2-3 (S.D. Cal. Nov. 5, 2014) (plaintiff assented to terms even though she did "not recall seeing or agreeing to any terms and conditions" on a website); *Harbers v. Eddie Bauer*, *LLC*, 2019 WL 6130822, at *4-6 (W.D. Wash. Nov. 19, 2019) ("Courts have rejected the argument that there was no mutual assent on the grounds that a party failed to read or fails to remember the terms of a contract."); *S.S. by & through Stern v. Peloton Interactive*, Inc., 566 F. Supp. 3d 1019, 1041 (S.D. Cal. 2021) ("[I]t is of no consequence whether the consumer actually clicks a hyperlink to read the terms containing the arbitration provision or not"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-40 (S.D.N.Y. 2012) ("[f]ailure to read a contract before agreement to its terms does not relieve a party of its obligations under the contract"). In short, "[w]hether or not Plaintiff[s] actually saw, reviewed, or read [Safeway's terms] is not relevant to the question of whether [they] agreed to them." *See Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 898 (C.D. Cal. 2020).

As Safeway's Motion pointed out, the relevant question is whether Safeway provided Plaintiffs with reasonably conspicuous notice of its updated terms, not whether Plaintiffs went ahead and read those terms. Motion at 9-11. Safeway's Email readily satisfies this standard. Indeed, the Email contains every hallmark of email notices that have been upheld in other cases: a clear, unambiguous subject line ("We've Updated Our Terms of Use"); notice that the terms would govern future purchases or use of the loyalty program ("These terms apply to new customers immediately and are effective from May 6, 2024 for our continuing customers"); and notice that the update includes an arbitration clause ("Our Terms of Use contain important information about your relationship with us, including that disputes between us will be arbitrated, instead of class actions or jury trials"). *See* Motion at 2-3. Notwithstanding the Opposition's claim that this was a "mass promotional email" or "mass spam email" in fact it had a single purpose: informing customers that the updated terms would govern their future interactions with Safeway. Plaintiffs do not and cannot dispute this. Literally nothing about this email was "promotional" or "spam"—terms that Plaintiffs repeatedly and baselessly use to describe it.

Plaintiffs fail to meaningfully distinguish the numerous cases cited in Safeway's motion that have enforced arbitration clauses based on similar emailed notice of updated terms. Motion at 9-11; *see, e.g., Sadlock v. Walt Disney Co.,* 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) (emails with updates gave plaintiff reasonably conspicuous notice of the agreement where subject line notified users of the update, the header repeated the language regarding updates, the email contained "clear" hyperlink to agreement, and email "call[ed] out" "express update to the arbitration agreement").

Plaintiffs' cited cases, in turn, are readily distinguishable, if not outright mischaracterized by the Opposition. For example, Plaintiffs lean heavily on *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023). While that case did involve email notice of updated terms, the similarities end there. Amazon did not or could not produce a copy of the email notice allegedly sent, any evidence the email was received, or even a description of the email, relying instead on "only a declaration with a vague statement that notice of updated terms was sent via email" *Id*. at 1100-1101. In fact, the Ninth Circuit opinion in *Jackson* distinguished the facts there from those in *In re Facebook Biometric Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016) and *Webber v. Uber Techs., Inc.*, 2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) (both

cited in Motion at 11-12) for that very reason—that Amazon did not produce a copy of the email and only provided a "vague statement that a notice of updated terms was sent via email." *Id.* In those cases, by contrast, the defendants provided a copy of the email providing notice of the updated terms, and in each case the court found such notice adequate to bind the respective plaintiffs. *Facebook Biometric Info. Priv. Litig.,* 185 F. Supp. 3d at 1167; *Webber*, 2018 WL 10151934, at *4. If anything, *Jackson* supports enforcing Safeway's arbitration agreement here because Safeway provided the very evidence it found lacking from Amazon.

Plaintiffs also distort the holding in *Towns v. W. Creek Fin., Inc.*, No. 2:22-CV-01757-DJC-AC, 2023 WL 7490007, at *5 (E.D. Cal. Nov. 13, 2023), where the court held that a customer of Mattress Express was not on inquiry notice so as to create a contract emailed to her by a third-party lessor ("Koalafi") that the plaintiff had never heard of or interacted with. Because the customer in that case believed that her agreement was with Mattress Express rather than a third party, it was "unreasonable to assume that Plaintiff would check her email for a copy of an agreement [from Koalafi] in the middle of a purchase unless she was told to expect it." *Id.* at *6. Here, Plaintiffs were each Safeway for U members with long histories of using their benefits to shop at Safeway; it would therefore not be a surprise that Safeway would send program-related communications to the email addresses associated with their accounts. This context is significant, as "'the contemplation of 'some sort of continuing relationship' … [can put] users on notice for a link to the terms of that continuing relationship." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir. 2023) ("'the contemplation of 'some sort of continuing relationship' … would have put users on notice for a link to the terms of that continuing relationship."); *see also Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 925 (N.D. Cal. 2024) ("[A] user engaging in a full registration process, as opposed to a one-time purchase, is more likely to expect a continuing relationship that would put her on notice for a link to the terms of that continuing relationship.").

Under these circumstances, as made clear in *Babaeva* and the other cases cited by Safeway, sending an email to specifically communicate updated terms provides reasonable notice sufficient to bind the recipients.

#### 3. Plaintiffs Do Not Dispute that (1) the Notice Email Said the Updated Terms Would Govern Future Purchases; (2) that they Continued Shopping with

**Safeway After the Email Notice Was Sent, or (3) that they Failed to Timely Opt-Out.**

Plaintiffs argue that Safeway has not shown that in-store purchases unambiguously manifested assent to Safeway's terms. Opp. at 16. This too is incorrect. Plaintiffs' convoluted position that terms communicated via the internet cannot govern in-store purchases defies well-settled law to the contrary. *See, e.g. Adibzadeh v. Best Buy, Co. Inc.*, No. 20-CV-06257-JSW, 2021 WL 4440313, at *6 (N.D. Cal. Mar. 2, 2021) (plaintiff who "was presented with and consented to conspicuous terms containing an arbitration agreement when he signed into BestBuy.com [] to make online purchases … agreed to arbitrate his claims individually and retroactively to purchases he made in-store and at home."). Plaintiffs' position is also untenable considering the plain language of Safeway's terms, which make clear that Plaintiffs' "continued access to or use of [their] Account[s] or Services constitutes acceptance of the current Terms" where "Services" includes "access to and use of all the [Safeway] stores." Michael Decl., Ex. A. Thus, unlike in *Berman*, where plaintiffs were not made aware that pressing a button would constitute assent to the terms at issue, Plaintiffs here were warned of the legal significance of their post-May 6 in-store purchases and thereby assented to the arbitration agreement. *See Sadlock*, 2023 WL 4869245, at *12; *Ghazizadeh*, 2024 WL 3455255, at *12–13.

Plaintiffs also dispute arbitrability—but that is for the arbitrator to decide. The Terms incorporate the American Arbitration Association rules, which delegate these issues to the arbitrator. Mot. at 12, *see also Zaimi v. Neiman Marcus Grp.*, LLC, 2022 WL 19569536, at *4 (C.D. Cal. Aug. 31, 2022) (finding that plaintiff's argument that "arbitration clause cannot cover the claims relating to her in-store purchases" was delegated to the arbitrator because the arbitration agreement incorporated the AAA rules).

**4. Safeway Properly Modified its Terms by Email.**

As in other cases upholding email notice campaigns similar to Safeway's, Plaintiffs "fail[] to explain why it would not be permissible for [Safeway] to in effect modify that existing agreement" in the manner that it did. *Sadlock v. Walt Disney Co.*, No. 22-CV-09155-EMC, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023). Neither of Plaintiffs' cited cases— *PMC v. Porthole Yachts, Ltd.*, 65 Cal. App. 4th 882, 887 (1998); *Motown Record Corp. v. Brockert*, 160 Cal. App. 3d 123, 133-34 (1984)—even considered the validity of email notices. The fact that Plaintiffs could not find a single case supporting

their argument, much less from the last 25 years, is telling.

Plaintiffs contend a retailer cannot update its terms by email unless the previous version of the terms expressly gives them that right. Opp. at 9-11. Plaintiffs do not cite a single case to support this non-sensical argument, which defies common notions of contract law—e.g., that offer, acceptance, and consideration can create a new contract. Here, Safeway produced the version of the Terms that was in place before the update. Michael Decl., Ex. A. But regardless of whether a previous agreement existed, the Parties could at any time agree to new or different terms. Here, Safeway proposed new terms through its notice email, offered Plaintiff an opportunity to opt-out, but Plaintiffs all agreed to the terms by continuing to reap the benefits of their Safeway for U accounts.

This Court's decision in *Sadlock v. Walt Disney Co.*, 2023 WL 4869245 (N.D. Cal. 2023) is instructive. There, the Court started by rejecting Disney's argument that the plaintiff had agreed to its subscriber agreement containing the arbitration clause when he registered for an ESPN account in 2013, or when he subscribed to Disney Streaming (ESPN+ and Disney+) in 2019. *Id*. at *2-3. Thus, as of 2019, he was not bound by any arbitration clause. But this did not matter—because ***after*** 2019, Disney emailed the plaintiff, notifying him that the Subscriber Agreement had been updated and would govern his future use of Disney's services. *Id*. at *5. By continuing to use his subscription, the plaintiff assented to the updated terms. *Id.* at *12. The Court enforced the updated agreement even though the previous version had not been enforceable.

Notably, the plaintiff in *Sadlock* attempted to distinguish other cases (many of which are cited in Safeway's motion, such as *In re Facebook* and *West*) by claiming that previous terms in those cases had already contained an arbitration clause, such that the courts only considered the post-agreement emails as a "secondary matter." *Id*. Plaintiffs make the same argument here. Opp. At 9. The *Sadlock* court rejected this argument:

> This distinction is not material. There was undisputedly an agreement ***of some kind*** between Mr. Sadlock and Disney based on his purchase of the subscription service, even if there was no agreement to the terms contained in the Subscription Agreement (including the arbitration provision). Mr. Sadlock fails to explain why it would not be permissible for Disney to in effect modify that existing agreement to purchase the subscription by adding the terms of the Subscription Agreement.

2023 WL 4869245 at *12 (Emphasis added). The court then concluded that "the emails provided

reasonably conspicuous notice of the Subscriber Agreement and that Mr. Sadlock unambiguously manifested assent to the terms of the agreement by continuing to use the streaming service after he received the emails." *Id*. at *13.[3] So too, here.

In any event, contrary to Plaintiffs' arguments, Safeway's Terms ***do*** state that Safeway "reserve[s] the right to make changes to these Terms at any time, and such changes will be effective immediately upon being posted on the Sites." Michael Decl., Ex. A; *Cf*. Opp. at 9. Safeway's prior Terms also contained similar language. For example, in *Ehrmantraut v. Safeway Inc.*, 732 F. Supp. 3d 1030, 1038 (D. Ariz. 2024), the District of Arizona enforced Safeway's arbitration agreement with a Safeway U member based on a version of the Terms of Use that was updated in November 2022. That version of the terms stated: "we reserve the right to update and/or modify these Terms at any time … Any modification will be effective upon posting of the updated Terms[.]" 2:23-cv-01739-SMB, Dkt. 14-1 (D. Ariz Oct. 16, 2023).

**B. The Arbitration Agreement is not Invalid Under *McGill*.**

Plaintiffs also contend that Safeway's motion fails under the so-called "*McGill* rule," which provides that "no one can contractually waive all rights to seek public injunctive relief." *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1152–53 (9th Cir. 2021) (citing *McGill*).

However, the *McGill* rule does not apply because Plaintiffs here do not seek "public injunctive relief." "Although the complaint labels the requested relief as 'public,' we must look beyond such conclusory assertions and assess for ourselves whether, under the applicable standards, the relief requested implicates the *McGill* rule." *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 548 (9th Cir. 2021). Where the proposed relief primarily benefits only "a group of individuals similarly situated to the plaintiff," *McGill* does not apply. *See Hodges*, 21 F.4th at 548-49. This is precisely the case here: the

---

[3] While the Court was careful to limit its holding to "the facts and arguments presented," and in fact laid out the roadmap followed by Plaintiffs here to challenge its findings in other cases, *id*. at 12-13, the facts here are virtually indistinguishable from those in *Sadlock*: there was some agreement in place between Plaintiffs and Safeway after they first registered for the Safeway for U rewards accounts, the terms of use were updated in a reasonably conspicuous manner by email, and Plaintiffs assented to those terms by continuing to use their rewards accounts after receiving notice.

Complaint only seeks to enjoin Safeway's pricing practices related to a specific set of products (wine) and related to prices specifically available to a subset of Safeway's customers (Safeway Rewards members). Plaintiffs' Opposition does not even attempt to claim—nor can it—that such relief qualifies as public injunctive relief.

And even if Plaintiffs were seeking public injunctive relief (which they are not), the Terms do not prevent them from doing so in individual arbitration. Where Plaintiffs "can seek public injunctive relief in either court or arbitration … then the arbitration agreement cannot be invalidated under the *McGill* rule." *Magill v. Wells Fargo Bank*, 2021 WL 6199649, at *6 (N.D. Cal. June 25, 2021) (relying on *DiCarlo* and compelling arbitration); *accord Hill v. BBVA USA*, 2021 WL 2206477, at *3 (S.D. Cal. June 1, 2021) (same); *Crosby v. Amazon.com Inc.*, 2021 WL 3185091, at *2 (C.D. Cal. Apr. 19, 2021) (same). Here, the Terms permit an arbitrator to "award legal or equitable remedies that are individual to you or the Company to satisfy one of our individual Claims." Michael Decl. Exhibit A. The fact that the arbitration must be brought on behalf of an individual rather than a class "does not prohibit the arbitrator from awarding relief that would affect those other than" Plaintiffs. *Maynez v. Walmart, Inc*., 479 F. Supp. 3d 890, 899 (C.D. Cal. 2020) (cleaned up). Hence, Safeway's arbitration agreement with Plaintiffs does not violate the *McGill* rule. *See id.* at 900.

**C. The Arbitration Agreement is not Unconscionable.**

Plaintiffs' arguments concerning conscionability should be decided by the arbitrator and not this court. *See, e.g. Zaimi*, 2022 WL 19569536, at *5 ("the Court will not reach the merits of Plaintiff's unconscionability arguments, as it is clear that Plaintiff's challenge is to the arbitration agreement as a whole, and is not specifically made against the delegation provision"); *Falls v. Soulbound Studios, LLC*, No. 221CV00961SVWJPR, 2021 WL 4295137, at *3 (C.D. Cal. July 6, 2021) ("Plaintiff claims that the entire contract is adhesive, … but Plaintiff makes no argument with respect to the delegation provisions [] themselves … [t]herefore, the Court concludes that the agreement to arbitrate arbitrability is enforceable"); *Dvorsky v. Axis Glob. Sys., LLC*, No. CV 17-422 DMG (AJWX), 2017 WL 7079459, at *4 (C.D. Cal. June 15, 2017) ("Given that Dvorsky has not directly challenged the Delegation Provision, the Court finds it valid and enforceable … Because Dvorsky's unconscionability arguments are for the

arbitrator to decide, the Court need not consider their merits"); *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1131 (S.D. Cal. 2024) ("pursuant to the Delegation Clause … the Court delegates any disputes about the unconscionability of the Informal Dispute Resolution provision to an arbitrator.").

Regardless, Plaintiffs' conclusory arguments fall flat. First, Plaintiffs argue that the arbitration agreement is procedurally unconscionable because Plaintiffs were "not presented any meaningful opportunity to actually accept the agreement at all" and were notified via "mass email". Opp. at 23. This argument is largely a rehash of Plaintiffs' flawed arguments regarding notice and assent. *See* § II.A.1-2, *supra*. Moreover, any indicia of unconscionability is cured by the Terms' opt-out provision, which Plaintiffs did not timely exercise. The Ninth Circuit has held that "an arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016); *see also Rubio v. Aarons LLC*, No. 1:24-CV-00526-KES-BAM, 2024 WL 4904512, at *6 (E.D. Cal. Nov. 27, 2024); *Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002). Because procedural unconscionability is not satisfied, this Court need not consider Plaintiffs' claims of substantive unconscionability. *See Cir. City Stores*, F. 3d at 1200.

Plaintiffs' arguments on substantive unconscionability fare no better. Plaintiffs complain about the fee-shifting provision pertaining to frivolous or improper claims, which provides:

> To the extent permitted by applicable law, a claimant must pay all costs incurred by the responding party, including any attorney fees, related to a Claim if an arbitrator determines that (i) the Claim was not warranted by existing law or by a nonfrivolous argument or (ii) the Claim was filed in arbitration for any improper purpose, such as to harass the responding party, cause unnecessary delay, or increase the cost of dispute resolution.

Michael Decl., Ex. A (discussed in Opp. at 24). Plaintiffs mischaracterize this section as a "loser pays" provision. It is not. The language clearly limits fee-shifting to baseless, frivolous, or otherwise improper claims, which is not substantively unconscionable. Plaintiffs do not explain how this provision might possibly apply to their claims, such as by contending that their claims are at risk of being deemed frivolous. In any event, Plaintiffs omit that this provision is expressly limited "[t]o the extent permitted by applicable law." Such a limitation dispels any notion of substantive unconscionability. *See Collins v. Diamond Pet Food Processors of California, LLC*, No. 2:13-CV-00113-MCE, 2013 WL 1791926, at *7 (E.D. Cal. Apr. 26, 2013) ("Because the attorney's fee provision in the arbitration agreements can be reasonably

interpreted as allowing an arbitrator to award attorney's fees only when permitted by law, the arbitration agreements are not substantively unconscionable.").

*Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 508, 551 P.3d 520 (2024) is on point. In that case, the Supreme Court of California held that "an arbitration agreement imposed as a condition of employment cannot require an employee to pay attorney fees to the employer in the arbitration of a statutory claim, ***unless the arbitrator finds that the action was frivolous, unreasonable, or groundless when brought, or that the employee continued to litigate after it clearly became so***." *Id*. at 541 (emphasis added). The court affirmed a finding that a fee-shifting provision was unconscionable specifically because it applied to scenarios where "the arbitrator has made no finding of frivolity, groundlessness, or continued litigation." *Id*. The same reasoning applies to the challenged fee-shifting provision above. Because the fee-shifting provision is limited to frivolous, harassing, or otherwise improper claims, and is limited to the extent permitted by applicable law, it is not substantively unconscionable.[4]

Plaintiffs also argue that the informal dispute resolution provision is unconscionable because it provides Safeway a "free peek" into Plaintiffs' case. Opp. at 24. That argument fails because the pre-arbitration procedures are mutual and do not provide either side any unfair advantage. *See Denson v. Keplr Vision, LLC*, No. 3:20-CV-2228-L-BGS, 2021 WL 3419237, at *3 (S.D. Cal. Aug. 5, 2021) (finding that an "informal resolution requirement is not unconscionable" where "the agreement simply requires the parties to pursue an informal resolution prior to arbitration" and "does not set forth any required steps that might provide Defendants with an unfair advantage"). Plaintiffs' cited authority similarly found unconscionable procedures that provided an employer a "free peek" of an employees' case specifically because the procedures were one-sided. *See Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1283, 16 Cal. Rptr. 3d 296, 307 (2004) (finding unconscionable an "employer-controlled dispute resolution mechanism (i.e., one without a neutral mediator) suggest[ing] that defendant would receive a 'free peek' at plaintiff's case"); *Bright v. Am. Home Shield Corp.*, No. 220CV02079KJMCKD, 2022 WL

[4] Relatedly, the preceding clause, pertaining to Arbitration Fees, states that "to the extent the initial-filing fee for the arbitration exceeds the initial-filing fee for a lawsuit, the Company will pay the difference in fees." Michael Decl., Ex. A. This provision imposes a unilateral burden on Safeway, rather than Plaintiffs, further undermining Plaintiffs' unconscionability challenge.

1626714, at *4 (E.D. Cal. May 23, 2022) (finding unconscionable pre-arbitration steps that were unilateral but nevertheless severing the unconscionable provision and compelling arbitration). Here, the requirement to "make a good-faith effort to negotiate for 45 days the resolution of any Claim or for a longer period as mutually agreed" before arbitrating applies equally to both sides and does not provide Safeway any unfair advantage.

## III. CONCLUSION

Based on the foregoing, Safeway asks the Court to refer Plaintiffs' claims to arbitration so that an arbitrator can determine arbitrability. Insofar as the Court is inclined to address arbitrability in the first instance, the Court should order Plaintiffs to arbitrate their claims, as the Parties' agreement requires. Either way, the Court should stay these proceedings pending the conclusion of arbitration.

Dated: June 9, 2024

Respectfully submitted,

*s/ Meegan B. Brooks*
STEPHANIE SHERIDAN (CA 135910)
MEEGAN B. BROOKS (CA 298570)
NICOLETTE SHAMSIAN (CA 341466)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorneys for Defendant Safeway, Inc.