UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TEMPEST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAFEWAY, INC.,<br><br>Defendant. | Case No. 24-cv-06553-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 32 |

Plaintiffs, members of Safeway, Inc.'s ("Safeway's") rewards program, seek to represent a class of Safeway Rewards members who purchased wine advertised at a members-only price. (Dkt. No. 30-1 ¶ 83.)[1] Plaintiffs allege Safeway "deceives its customers by offering false discounts on its wine prices when, in fact, Safeway's sale prices are not temporary at all but are instead . . . always available to every consumer as part of its free [rewards] program available at checkout." (*Id.* ¶ 29.) Now pending before the Court is Safeway's motion to dismiss. (Dkt. No. 32.) Having carefully considered the parties' submissions, the Court concludes oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and **GRANTS** Defendant's motion to dismiss. Plaintiffs' claims are all grounded in Defendant's alleged course of fraudulent conduct and therefore subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. However, Plaintiffs have failed to plausibly plead the claims with particularity as required under Rule 9(b). Defendant raises several other grounds for dismissal related to Plaintiffs' failure to plead specific elements of the asserted claims, which, as appropriate, the Court addresses in turn.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

# BACKGROUND

## I. COMPLAINT ALLEGATIONS

Plaintiffs Michael Tempest, LaDiamond Harvey, Sarah McGregor Horner, Brionna Brouhard, Kerry McCarty, Hillary Beam, and Christopher Lundt are residents of California, Oregon, and the District of Columbia. (Dkt. No. 30-1 ¶¶ 8-14.) All are members of "Safeway Rewards," also referred to as "Safeway for U," which is a "free membership rewards program for customers." (*Id.* ¶¶ 1, 19, 45, 50, 55, 60, 65, 70, 75.) "Members are eligible to receive purported price discounts on products available for purchases in-store as long as they use their account number at checkout." (*Id.* ¶ 21.) Plaintiffs purchased wine "advertised as marked down from a reference price, as a time-limited discount promotion for Safeway Rewards members." (*Id.* ¶¶ 45, 50, 55, 60, 65, 70, 75.) Specifically, "[i]n its stores, Safeway prominently displays the reference price in black and white, with the sale price highlighted below in red and yellow with an end date for the supposed sale, to create the impression that the reference price is the usual price and the sale price is a special offer." (*Id.* ¶ 31.) Plaintiffs saw "a higher price affixed to the store shelf with a bright flyer beneath that advertised a time-limited temporary sale price." (*Id.* ¶¶ 45, 50, 55, 60, 65, 70, 75.) For example:



(*Id.* ¶ 32.)

2

1    Based on the flyers, Plaintiffs believed they were "buying wine at a temporary discounted
2    sale price and had therefore saved money on the purchase by making it during the time-period for
3    the sale that Safeway consistently included in its shelf advertising." (*Id.* ¶¶ 46, 51, 56, 61, 66, 71,
4    76.) But Plaintiffs were "not actually buying wine at lower prices than ordinarily offered—as the
5    wine is always offered at the discount price to all consumers (who can become members at check
6    out for free)." (*Id.* ¶ 34.) While the discount label has a listed end date, or "Thru" date,
7    "immediately after each purportedly time-limited sale ends, Safeway generates another similar or
8    identical discount with a new expiration date." (*Id.* ¶ 35.)

    For instance, Apothic Red Blend Wine, purchased by Ms. Brouhard, was "advertised at $12.99 for Rewards members through July 11, 2024," but it was still advertised for sale at $12.99 as of September 2024. (*Id.* ¶¶ 36, 60.) Similarly, as of September 2024, Defendant continued to sell Meiomi Pinot Noir Red Wine for $24.99, marked down from $36.99, despite its April 23, 2024 "Thru" date. (*Id.* ¶ 38.) "During any 90-day period within the class period, Safeway did not once offer Joel Gott 815 Cabernet Sauvignon, Chateau St. Michelle Sauvignon Blanc, Josh Cellars Merlot, Decoy Cabernet Sauvignon, Menage a Trois Red Blend, La Marca Prosecco Sparkling Wine, Sutter Home wines, Chateau Ste. Michelle Cabernet Sauvignon, Carmenet Chardonnay, Ferrari-Carrano Fume, or Wente Chardonnay to Safeway Rewards members at the advertised reference prices." (*Id.* ¶ 39.)

    Furthermore, "Safeway is, in fact, offering no discount to its U Rewards customers at all" because "[b]oth the reference price *and* the supposedly temporarily discounted prices are above market rate for the wine bottles at issue." (*Id.* ¶ 30.) For example, "on December 31, 2024, Safeway advertised a 750ml bottle of Meiomi Pinot Noir Red Wine for a 'sale' price of $22.88, marked down from a 'full' price of $36.99." (*Id.* ¶ 37.) However, the same wine was regularly sold for $16.97 at Total Wine & More, $19.72 at Walmart, and $19.99 at Target. (*Id.*) Safeway's "fraudulent use of reference prices and supposedly temporary discounted prices is a ploy to sell customers more bottles of wine and never provides any discount at all." (*Id.* ¶ 30.)

    Plaintiffs "would not have purchased individual bottles of wine if [they] had known that [they were] not receiving time-limited savings off a former price, as [they were] led to believe, or

3

[they] would not have purchased it on the same terms or the same price." (*Id.* ¶¶ 47, 52, 57, 62, 67, 72, 77.) But Plaintiffs "would buy member-priced wine from Safeway in the future, if [they] could trust that the advertised discounts were actual time-limited markdowns from true reference prices." (*Id.* ¶¶ 48, 53, 58, 63, 68, 73, 78.)

## II. PROCEDURAL HISTORY

Plaintiffs sued Safeway in a putative class action in September 2024. (Dkt. No. 1.) Safeway moved to compel arbitration and to dismiss Plaintiffs' complaint. (Dkt. Nos. 20, 22.) The Court subsequently granted the parties' stipulation to Plaintiffs filing an amended complaint and terminated Safeway's pending motions as moot. (Dkt. Nos. 25, 26.) Plaintiffs filed an amended complaint, and then the operative Second Amended Complaint ("SAC"). (Dkt. Nos. 27, 30.) On behalf of a putative nationwide class and California, Oregon, and D.C. subclasses, Plaintiffs allege violations of (1) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (3) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1760 *et seq.*; (4) breach of contract; (5) unjust enrichment; (6) fraud; (7) Oregon's Unlawful Trade Practices Act ("Oregon statute"), O.R.S. 646.605 *et seq.*; and (8) the District of Columbia's Consumer Protection Procedures Act ("D.C. statute"), D.C. Code § 28-3901 *et seq.* (*Id.* at 26-38.) Safeway again moved to compel arbitration, and the Court denied the motion. (Dkt. Nos. 33, 49.) Now pending is Safeway's motion to dismiss the SAC. (Dkt. No. 32.)

## LEGAL STANDARD

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it lacks sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted). A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing the complaint, a district court must assume the plaintiffs' allegations are true and draw all reasonable inferences in their favor. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A court need not, however, accept conclusory statements or unreasonable inferences as true. *Id.*

# DISCUSSION

## I. RULE 9(B) PLEADING STANDARD

### A. Rule 9(b) Applies to All of Plaintiffs' Claims

Under Federal Rule of Civil Procedure 9(b), claims "grounded in fraud" or "sound[ing] in fraud," must be pled with particularity. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (cleaned up). A claim "sound[s] in fraud" if it "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *see also id.* at 1103-04 (explaining for claims sounding in fraud "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)").

It is undisputed the UCL, FAL, CLRA, breach of contract, fraud, and unjust enrichment claims "sound in fraud" and are subject to Rule 9(b)'s heightened pleading standard. *See Biederman v. FCA US LLC*, 765 F. Supp. 3d 920, 941-42 (N.D. Cal. 2025) (applying heightened pleading standard to UCL, FAL, and CLRA claims), *motion to certify appeal granted, reconsideration denied*, No. 23-CV-06640-JSC, 2025 WL 1266907 (N.D. Cal. May 1, 2025); *Prescott v. Reckitt Benckiser LLC*, No. 20-CV-02101-BLF, 2020 WL 7075624, at *6 (N.D. Cal. Dec. 3, 2020) ("The Quasi-Contract Claim likewise must satisfy Rule 9(b), because it is based on the same allegedly misleading labeling giving rise to the UCL and CLRA claims."); *Moody v. Hot Topic, Inc.*, No. EDCV 23-0447 JGB (SPX), 2023 WL 9511159, at *9 (C.D. Cal. Nov. 15, 2023) (applying heightened pleading standard to breach of contract claims "based in the same allegations as Plaintiffs' FAL, UCL, CLRA, intentional misrepresentation, and negligent misrepresentation claims"); *Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017) ("Because the unjust enrichment claim is based on fraud, it too is subject to Rule 9(b).").

But the parties dispute whether Rule 9(b)'s heightened pleading standard applies to Plaintiffs' Oregon and D.C. statutory claims. "It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action" because "the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Vess*, 317 F.3d at 1103 (cleaned up). So, even if fraud is not a necessary element

5

of a state law cause of action, a plaintiff who alleges a defendant's "unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim," must allege that fraudulent conduct with particularity to satisfy Rule 9(b). *Kearns*, 567 F.3d at 1125. However, "[t]o determine if the elements of fraud have been pleaded to state a cause of action [a court] look[s] to state law." *Id.* at 1126. For example, in *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), when the plaintiff alleged Ford's nondisclosure violated California statutes, the Ninth Circuit looked to California state law. *See id.* at 1127. And, because California state law considered "nondisclosure [] a claim for misrepresentation in a cause of action for fraud," the plaintiff's state statutory claims needed to meet Rule 9(b)'s heightened pleading standard. *See id.*

Plaintiffs' Oregon statutory claim is subject to the heightened pleading requirement. The five elements of Oregon common-law fraud are: (1) "the defendant made a material misrepresentation that was false," (2) "the defendant did so knowing that the representation was false," (3) "the defendant intended the plaintiff to rely on the misrepresentation," (4) "the plaintiff justifiably relied on the [defendant's] misrepresentation," and (5) "the plaintiff was damaged as a result of that reliance." *Strawn v. Farmers Ins. Co. of Or.*, 350 Or. 336, 351-52 (2011). Plaintiffs' allegations as to their Oregon statutory claim parallel the Oregon state law elements of fraud. Plaintiffs allege Defendant (1) made a material misrepresentation through "use of the false reference prices" and "discount[s] off the false reference price[s] for a false time," (2) did so knowingly, and (3) regarded the reference price "as important in determining the buyer's choice of action." (Dkt. No. 30-1 ¶¶ 165, 168, 169.) Plaintiffs further allege (4) "a reasonable person would attach importance to [the reference price's] existence or nonexistence when determining his or her choice of action in the transaction." (*Id.* ¶ 168.) And, because of Plaintiffs' reliance on the representations, (5) they "suffered ascertainable losses." (*Id.* ¶ 170.) So, Plaintiffs' Oregon statutory claim sounds in fraud and is subject to Rule 9(b)'s heightened pleading standard. *See Latham v. PWCC Marketplace, LLC*, No. 3:21-CV-01381-MO, 2022 WL 226807, at *2 (D. Or. Jan. 25, 2022) (noting Oregon statute "does not require a plaintiff to prove a defendant committed fraud," but applying Rule 9(b) because plaintiff's "claim alleges a course of conduct that fits the elements of fraud").

Plaintiffs' reliance on *Silva v. Unique Beverage Co., LLC*, No. 3:17-CV-00391-HZ, 2017 WL 2642286 (D. Or. June 15, 2017) to argue Rule 9(b) does not apply is not persuasive. In *Silva*, the court determined a heightened pleading standard did not apply to the plaintiff's Unlawful Trade Practices Act claim because of differences between the elements required by the Oregon statute and common law fraud. *Id.* at *13. But that is not the correct comparison. Instead, a court "must focus on whether Plaintiffs' second amended complaint sounds in fraud based on a comparison between their allegations and the elements of fraud under Oregon law, not a comparison of the elements of [the Oregon statute] and fraud claims, as in . . . *Silva*." *Ivie v. Mission Rock Residential LLC*, No. 3:21-CV-01122-SB, 2022 WL 2612215, at *11 (D. Or. May 27, 2022); *see also Mack v. LLR, Inc.*, No. 17-cv-00853, 2018 WL 6927860, at *11 (C.D. Cal. Aug. 15, 2018) (rejecting plaintiff's reliance on *Silva*). Here, Plaintiffs' Oregon statutory claim "alleges a course of conduct that fits the elements of fraud." *See Latham*, 2022 WL 226807, at *2. So, Plaintiffs' Oregon statutory claim is held to the heightened pleading standard.

Because Plaintiffs' D.C. statutory claim alleges a course of conduct that fits the D.C. elements of fraud, it is similarly subject to the heightened pleading standard. The elements of a fraud claim under D.C. law are: "(1) a false representation, (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." *In re Estate of Nethken*, 978 A.2d 603, 607 (D.C. 2009) (cleaned up). Plaintiffs' D.C. statutory claim alleges Defendant's (1) "false reference prices" and "discount[s] off the false reference price[s] for a false time" are "untrue or misleading statements," (2) both of which were material to buyers' choice to purchase the wine. (Dkt. No. 30-1 ¶¶ 184-85). Plaintiffs also allege Defendant (3) "creates the illusion of a sale" (4) as "a ploy to sell customers more bottles of wine," and (5) D.C. resident Plaintiff Lundt alleges he purchased wine "[b]ased on Safeway's representations." (*Id.* ¶¶ 29, 30, 76, 173 (restating paragraphs 1 through 91 in D.C. statutory claim).) Because Plaintiffs rely entirely on a fraudulent course of conduct, as recognized by D.C. law, to state their D.C. statutory claim, that course of conduct is subject to Rule 9(b)'s heightened pleading requirements.

Plaintiffs' reliance on *Campbell v. National Union Fire Insurance Co.*, 130 F. Supp. 3d 236 (D.D.C. 2015), is unavailing. *Campbell* cited D.C. Court of Appeals decisions explaining the D.C. statute "was 'intended to overcome the pleadings problem associated with common law fraud claims by eliminating the requirement of proving certain elements such as intent to deceive and scienter.'" *Id.* at 267 (quoting *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1073 n.20 (D.C. 2008)). *Campbell* therefore decided "in the context of a [D.C. Consumer Protection Procedures Act] claim—a cause of action specifically created with the intent to relieve plaintiffs from the burden of pleading fraud"—it was inappropriate to "hold[] plaintiffs to the particularized pleading requirements applicable to claims of fraud." *Id.* However, the Ninth Circuit has specifically rejected this reasoning. In *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003), the Ninth Circuit agreed "fraud is not an essential element" of the plaintiff's California statutory claims but disagreed with the plaintiff "that his averments of fraud therefore escape[d] the requirements of [Rule 9(b)]." *Id.* at 1103. Instead, whenever there are allegations of fraudulent conduct, Rule 9(b) requires "the circumstances constituting fraud" be described with particularity. *See id.* at 1104 (quoting Fed. R. Civ. P. 9(b)). Because, as explained above, Plaintiffs' D.C. statutory claim "rel[ies] entirely on [a fraudulent] course of conduct as the basis of a claim[,] . . . the pleadings of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *See id.* at 1103-04 (cleaned up).

So, all of Plaintiffs' claims sound in fraud and must meet Rule 9(b)'s heightened pleading standard.

**B.     The SAC Does not Satisfy Rule 9(b)**

To determine whether a claim sounding in fraud satisfies Rule 9(b), a district court considers whether the complaint alleges "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (cleaned up). Rule 9(b)'s particularity requirement exists in part "to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs." *Kearns*, 567 F.3d at 1125 (cleaned

8

1  up). Plaintiffs allege two categories of misrepresentations: (1) falsely advertising the lower

2  member prices as time limited based on the "Thru" dates, and (2) displaying the non-member price

3  as a false reference price. Neither is pled with sufficient particularity.

4        Plaintiffs allege that within the limitations period they purchased wines at Safeway stores

5  in Oregon, California, and D.C. (Dkt. No. 30-1 ¶¶ 45, 50, 55, 60, 65, 70, 75.) They do not,

6  however, allege any dates on which they saw the price tags and purchased wine (the "when") or

7  the specific Safeway stores in Oregon, California, and D.C. from which they purchased wine (the

8  "where"). *Cf. Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017)

9  (the plaintiff's allegations she "purchased products with Compared To price tags in a Last Call

10 store in Camarillo, California (the 'Where'), on July 21, 2014 (the 'When')" satisfied Rule 9(b)).

11       The "what" is also deficient. Plaintiffs allege the price tags affixed to the store shelf with a

12 bright flyer underneath advertised a "time limited temporary sale price on individual bottles of

13 wine that was several dollars less than [the] affixed shelf price." (Dkt. No. 30-1 ¶¶ 45, 50, 55, 60,

14 65, 70, 75.) While Plaintiffs point to exemplars of the advertisements they relied upon (*id.* ¶¶ 31-

15 33), they do not allege facts regarding the shelf flyers *they saw and relied upon*, such as the listed

16 member price, the non-member price, or the "Thru" date for the wine Plaintiffs purchased. *See*

17 *Marks v. United Parks & Resorts, Inc.*, No. 24-CV-1992-MMA-KSC, 2025 WL 2767941, at *9

18 (S.D. Cal. Sept. 26, 2025) (concluding the plaintiff had not met Rule 9(b)'s particularity

19 requirement even though the plaintiff alleged a specific on-sale price because she had "not

20 identif[ed] the specific former price tied to her transaction or comparable temporal particulars

21 about the sale representation she relied on").

22       Plaintiffs similarly do not plead with particularity "how" the representations *made to*

23 *Plaintiffs* were false or misleading. Plaintiffs allege they believed they were "buying wine at a

24 temporary discounted sale price and had therefore saved money on the purchase by making it

25 during the time-period for the sale that Safeway consistently included in its shelf advertising."

26 (Dkt. No. 30-1 ¶¶ 46, 51, 56, 61, 66, 71, 76.) Instead, "the sale would actually be indefinite and []

27 Safeway would not sell the wine in question to Safeway Rewards members at the reference price."

28 (*Id.*) Plaintiffs rely on their counsel's investigation to allege Defendant's representations as to the

9

non-member prices and "Thru" dates were false and misleading. Plaintiffs' counsel investigated two bottles of wine, Apothic Red Blend Wine and Meiomi Pinot Noir Red Wine—only one of which a Plaintiff allegedly purchased. (*Id.* ¶¶ 36-38, 60.) Both wines were sold at the member "sale" price beyond the listed "Thru" dates, and Meiomi Pinot Noir Red Wine was sold at other non-Safeway stores for a lower price than Defendant's member price. (*Id.* ¶¶ 36-38.) But Plaintiffs' counsel is not a plaintiff, and Plaintiffs do not allege buying these wines during the time period or at the price investigated by their counsel. Counsel's investigation into a single purchased bottle of wine and Plaintiffs' conclusory allegation that none of the wine purchased was offered "to Safeway Rewards members at the advertised reference prices" are not sufficient to plausibly suggest the representations *made to Plaintiffs* were false or misleading. (*Id.* ¶¶ 36, 39, 60.) Ultimately, absent factual allegations as to what representation(s) Plaintiffs *themselves* saw, relied on, and were misled by, the SAC does not satisfy Rule 9(b) and plausibly allege false or misleading representations.

\* \* \*

Accordingly, the Court dismisses all SAC claims for failure to meet Rule 9(b)'s heightened pleading standard.

## II.   ADDITIONAL GROUNDS FOR DISMISSAL

In addition to failing to comply with Rule 9(b), Plaintiffs' claims fail for additional reasons.

### A.   Reasonable Consumer Test

Plaintiffs' claims are governed by the "reasonable consumer" test. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (citation omitted). Under this standard, Plaintiffs must "show that members of the public are likely to be deceived." *Id.* (quotation marks and citation omitted) (applying test to UCL, FAL, and CLRA claims); *see also Whiting v. AARP*, 637 F.3d 355, 363 (D.C. Cir. 2011) (explaining a D.C. Consumer Protection Procedures Act "claim of an unfair trade practice is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer" (quotation marks and citation omitted)); *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 135 n.26 (2015) (explaining a misrepresentation claim

under Oregon's Unlawful Trade Practices Act "is determined based on an objective standard of what a reasonable consumer would understand the representation to be").

"California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the pleadings stage]." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007)). Similarly, dismissals of UCL, FAL, and CLRA claims at the pleadings stage are rare. *See Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024). Nevertheless, dismissal is appropriate when "the advertisement itself makes it impossible for the plaintiff to prove that a reasonable consumer is likely to be deceived." *Id.* (cleaned up).

Plaintiffs' allegations as to the non-member prices being false reference prices are insufficient to plausibly show a reasonable consumer would be deceived. Plaintiffs allege Defendant "intentionally inflates the reference price on the shelf and then sells individual bottles of wine for a purported discount that is not a discount at all as the 'sale' prices are not actually discounted prices." (Dkt. No. 30-1 ¶ 6.) For instance, Meiomi Pinot Noir Red Wine, which no Plaintiff alleges purchasing, was sold for prices lower than the member price at a variety of other retail stores. (*Id.* ¶ 37.) Plaintiffs do not, however, identify the market prices of the wines purchased, or even how their "market price" is determined. More significantly, nor do Plaintiffs allege Defendant represented its prices to be at or below the so-called market price. Indeed, the exemplar shelf flyers make no representation as to the market prices of the wines. (*Id.* ¶¶ 31-32.) Instead, drawing reasonable inferences in Plaintiffs' favor, the shelf flyers represent the member price is lower than the non-member price. But the higher non-member prices are indisputably real prices charged to non-members. Plaintiffs therefore do not plausibly allege reasonable consumers would be deceived by the non-member price. *See Carvalho v. HP, Inc.*, No. 21-CV-08015-BLF, 2022 WL 2290595, at *4 (N.D. Cal. June 24, 2022) (concluding plaintiffs had not established reasonable consumers would be deceived when their "complaint [did] not contain any allegations that the strikethrough prices displayed on HP's website are 'inflated' or 'why they do not

11

1 accurately reflect prevailing market prices'" (citation omitted)). For this reason, too, the claims

2 regarding the false reference prices must be dismissed.

### B. Arguments as to Specific Claims

#### 1. Breach of Contract

##### a. Pre-Suit Notice

To state a claim for breach of contract or breach of warranty in California, "a buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (cleaned up); *see also* Cal. Com. Code § 2607(3)(A) ("The buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy."). "[T]he notice requirement means pre-suit notice." *Alvarez*, 656 F.3d at 932 (explaining "purpose . . . is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court"). "The buyer has the burden of [alleging] that reasonable notice was provided." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010) (citing *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 135 (2008)).

Plaintiffs allege they provided Defendant with notice via a letter sent on September 17, 2024, one day before filing suit. (Dkt. No. 1; Dkt. No. 30-1 ¶ 139.) Plaintiffs do not allege Defendant received notice before filing suit. Indeed, Defendant insists the letter was not delivered until September 26, 2024—over a week after the suit was filed.[2] Notice received over a week after filing suit is not pre-suit notice. *See Evans v. DSW, Inc.*, No. CV 16-3791 JGB (SPx), 2017 WL 7058232, at *5 (C.D. Cal. Sept. 14, 2017) (finding notice did not provide "an adequate opportunity

---

[2] Defendant seeks judicial notice of the letter's delivery date. "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "The tracking information contained on the United States Postal Service website is [] a proper subject for judicial notice because it is a government website so it is not subject to reasonable dispute and is capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *Evans v. DSW, Inc.*, No. CV 16-3791 JGB (SPX), 2017 WL 7058232, at *2 n.3 (C.D. Cal. Sept. 14, 2017) (cleaned up). So, the Court grants Defendant's request for judicial notice.

to cure any breaches or negotiate a settlement since the letter was received the same day the suit was filed").

Plaintiffs do not dispute Defendant did not receive notice of its alleged breach of contract until after Plaintiffs filed suit, so Defendant had no opportunity to cure the alleged breach. *See Alvarez*, 656 F.3d at 932. Plaintiffs instead argue the question of reasonable pre-suit notice "is usually a question of fact that cannot be decided at the pleading stage." *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1307 (2009). But because Plaintiffs fail to allege Defendant received notice before Plaintiffs filed suit, Plaintiffs have not met their burden of showing there is even a question of fact as to whether reasonable notice was provided. So, they cannot state a California breach of contract claim.

### b. Contract Terms

"To state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract." *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989); *see also Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996) ("To state a claim for breach of contract, plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." (quotation marks and citations omitted)). Plaintiffs allege their contracts with Defendant "required that Safeway provide Plaintiffs . . . with wine products that have a former price, and a market value, equal to the advertised regular prices" and provide "the advertised specific discounts for Safeway Rewards members." (Dkt. No. 30-1 ¶ 136.) But, as discussed above, Plaintiffs have not defined the so-called market prices or alleged Defendant represented its prices to be at or below market prices. As for the former prices, Plaintiffs do not plausibly allege Defendant represented the wine offered at the member price to have been formerly offered at the non-member price. And the exemplar shelf flyers do not say anything about a former price, only depicting a member and non-member price. (*Id.* ¶¶ 31-33.) Given Plaintiffs have not sufficiently alleged the terms of the contract at issue, they fail to plausibly allege Defendant breached said contract. *See De Rocha Express, Inc. v. Combined Res., Inc.*, No. 24-CV-02037-JST, 2024 WL 4504536, at *2 (N.D. Cal. Oct. 15, 2024) ("Because De Rocha has failed to allege facts regarding

the terms of the contract, he also cannot plausibly allege breach.").

So, Plaintiffs do not sufficiently allege Defendant's breach of contract, and California Plaintiffs' breach of contract claim also fails because they did not provide pre-suit notice.

### 2. Unjust Enrichment

"[I]n California, there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Rather, the term "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id.* (citation omitted). Courts "construe the [unjust enrichment] cause of action as a quasi-contract claim seeking restitution." *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)); *see also Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) ("[T]he California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed[.]")). Under Federal Rule of Civil Procedure 8(d)(2), at the pleading stage Plaintiffs may allege both a breach of contract claim and, in the alternative, a quasi-contract claim. *See* Fed. R. Civ. P. 8(d)(2); *Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, No. C-11-2576 EMC, 2011 WL 6099394, at *9 (N.D. Cal. Dec. 7, 2011) ("[E]ven though a plaintiff may not ultimately prevail under both unjust enrichment and breach of contract, it may plead both in the alternative."). But "a plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020); *see also Rutherford Holdings*, 223 Cal. App. 4th at 231 ("[A]n action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." (quotation marks and citation omitted)).

Plaintiffs only allege "due to Defendant's misrepresentations, its contracts with Plaintiffs and members of the California and Oregon Subclasses are void or voidable." (Dkt. No. 30-1 ¶ 145.) However, Plaintiffs have not made any factual allegations as to the contracts' voidability. *See Saroya*, 503 F. Supp. 3d at 998. So, Plaintiffs do not sufficiently plead their unjust enrichment claim.

14

## III. EQUITABLE RELIEF

### A. Injunctive Relief

Plaintiffs must demonstrate Article III standing for each form of relief requested. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quotation marks and citation omitted). "Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a real or immediate threat . . . that he will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quotation marks and citation omitted). In the false advertising context, "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018).

Plaintiffs allege "[i]f they had known that the price was a permanent price always available to members, and not a special temporary reduction of the regular price, they would not have purchased bottles of wine from Safeway." (Dkt. No. 30-1 ¶ 7.) But Plaintiffs "would buy member-priced wine from Safeway in the future, if [they] could trust that the advertised discounts were actual time-limited markdowns from true reference prices." (*Id.* ¶¶ 48, 53, 58, 63, 68, 73, 78.) Plaintiffs' allegations are sufficient to establish standing to seek injunctive relief. *Davidson v. Kimberly-Clark Corp.*, 880 F.3d 956 (9th Cir. 2018), is instructive. There, the plaintiff desired to purchase Kimberly-Clark's flushable wipes but was "unable to rely on Kimberly-Clark's representations of its product"—that the wipes were flushable—"in deciding whether or not she should purchase the product in the future." *Id.* at 971-72. The Ninth Circuit held the allegations "constitute[d] a threatened injury that [was] certainly impending." *Id.* at 972 (cleaned up).

Defendant argues while the *Davidson* plaintiff could not tell whether the flushable label was truthful without buying the product, Plaintiffs could "easily ask sales associates" or "look [competitors' prices] up on their phones." (Dkt. No. 32 at 25.) However, that Plaintiffs could wage their own investigation of past pricing or ask an employee about future pricing does not

15

foreclose the risk of future injury. The *Davidson* plaintiff also could have reached out to Kimberly-Clark or monitored product reviews to figure out the truth of the representations. *See* 889 F.3d at 971-72. But as the Ninth Circuit did not require that of her, the Court does not require that of Plaintiffs here. Ultimately, Plaintiffs cannot be sure a lower member-only price will remain the same after the "Thru" date until *after* the "Thru" date has passed. So, Plaintiffs must either risk losing out on the lowest price by waiting to buy until after the "Thru" date or risk being deceived by a time-limited discount that does not end. *See Crowder v. Shade Store, LLC*, No. 23-CV-02331-NC, 2025 WL 754067, at *3 (N.D. Cal. Mar. 10, 2025) (finding allegations sufficient to establish equitable jurisdiction over Plaintiffs' claim for injunctive relief where plaintiffs alleged they "would purchase or consider purchasing Products from Defendant again in the future if they could feel sure that Defendant's . . . discounts were truthful").

Furthermore, unlike in the cases Defendant cites, Plaintiffs cannot simply look at the product label to determine the truth of the representation. *See Kenney v. Fruit of the Earth, Inc.*, No. 23-55583, 2024 WL 4578981, at *1 (9th Cir. Oct. 25, 2024) ("Kenney is aware that the sunscreen's back label states that it contains octocrylene, a chemical active ingredient," so "Kenney need not purchase the sunscreen again to determine whether it has non-zinc active ingredients"); *see also Caldwell v. Nordic Nats., Inc.*, 709 F. Supp. 3d 889, 910 (N.D. Cal. 2024) (determining plaintiff lacked standing to pursue injunctive relief when plaintiff was made aware the Ultimate Omega 2X product did not contain twice the amount of omega as the regular Ultimate Omega product and could compare the products to confirm); *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906-07 (N.D. Cal. 2021) (concluding plaintiff lacked standing to seek injunctive relief due to an allegedly misleading dosage label when product's back label clarified the dosage).

Accordingly, Plaintiffs sufficiently allege standing to seek injunctive relief.

### B. Adequate Remedy at Law

Unlike state courts, federal courts must have equitable jurisdiction to hear the merits of an equitable claim. *See Guzman v. Polaris Indus., Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022). Federal courts have equitable jurisdiction only when a plaintiff has no adequate legal remedy based on the same harm. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843-44 (9th Cir. 2020). So, if

monetary damages provide an adequate remedy, a federal court may not consider the merits of equitable claims for restitution. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75-76 (1992). Plaintiffs bear the burden of establishing they lack an adequate legal remedy before they can obtain monetary equitable relief in federal court. *See Sonner*, 971 F.3d at 844.

Plaintiffs allege "[l]egal remedies available to Plaintiffs and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages." (Dkt. No. 30-1 ¶ 80.) Plaintiffs do not allege facts to support those conclusions, let alone how damages being less prompt, efficient, and certain makes them inadequate. Nevertheless, as Plaintiffs contend, little is required at this stage. *See Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1129 (N.D. Cal. 2023) ("Plaintiffs alleged that legal remedies were not as certain as equitable remedies. That is sufficient." (citations omitted)); *see also Weizman v. Talkspace, Inc.*, 705 F. Supp. 3d 984, 990 n.3 (N.D. Cal. Dec. 6, 2023) (a plaintiff "need not explain in great detail why her legal remedies are insufficient; an allegation to that effect is generally enough"). But whether Plaintiffs have an adequate remedy at law may impact the limitations period, and thus the class period. So, should Plaintiffs choose to amend, the Court may decide to resolve the question of equitable jurisdiction on the next motion to dismiss.

## IV. LEAVE TO AMEND

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation marks and citations omitted). Thus, Plaintiffs are given leave to amend all claims except for Plaintiffs' California breach of contract claim. Because failure to provide pre-suit notice of a breach of contract cannot be cured in this lawsuit, the Court dismisses Plaintiffs' California breach of contract claim without leave to amend, but without prejudice. *See, e.g.*, *Adkins v. Apple Inc.*, 147 F. Supp. 3d 913, 921 (N.D. Cal. 2014) (dismissing breach of warranty claim without leave to amend for failure to provide pre-suit notice).

17

**CONCLUSION**

For the above reasons, the Court **GRANTS** Defendant's motion to dismiss all Plaintiffs' claims. Apart from Plaintiffs' California breach of contract claim, Plaintiffs' claims are dismissed with leave to amend the claims. But Plaintiffs may not add new claims or parties without further leave of Court. Plaintiffs' California breach of contract claim is dismissed without leave to amend, but without prejudice, for failure to provide pre-suit notice.

Plaintiff's Third Amended Complaint, if any, shall be filed by December 5, 2025. Failure to file a Third Amended Complaint will result in entry of judgment in Defendant's favor on all claims.

This Order disposes of Docket No. 32.

**IT IS SO ORDERED.**

Dated: November 13, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge