# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TEMPEST, et al.,<br><br>      Plaintiffs,<br><br>   v.<br><br>SAFEWAY, INC.,<br><br>      Defendant. | Case No. 24-cv-06553-JSC<br><br>**ORDER RE: MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 75 |

Plaintiffs, on a behalf of a putative class of Safeway, Inc. ("Safeway") rewards program members who purchased wine at an advertised members-only price, allege Safeway deceives its customers by advertising discounted member prices on wine as temporary when, in fact, Safeway's "member prices are not temporary at all" and are "always [] available to consumers as part of its free Rewards program available at checkout." (Dkt. No. 60 ¶¶ 24, 101.)[1] Pending before the Court is Safeway's motion to dismiss Plaintiff's third amended complaint. (Dkt. No. 75.) Having carefully considered the parties' submissions, the Court considers oral argument unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS IN PART and DENIES IN PART Safeway's motion to dismiss. Specifically, because Plaintiffs do not oppose dismissal, the Court dismisses Plaintiffs' unjust enrichment claims and requests for equitable relief, except for Mr. Tempest's injunctive relief claims under California law. The Court otherwise denies Safeway's motion.

\\

\\

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court<br>Northern District of California

**BACKGROUND**

**I.      COMPLAINT ALLEGATIONS**

Plaintiffs allege "on store shelves below individual bottles of wine, Safeway includes a non-sale price stuck or fastened to the shelf (the reference price) above a temporary shelf flyer that includes a purported time-limited sale price for Rewards members on an individual bottle of wine 'Thru' a certain date (the discount price)." (Dkt. No. 60 ¶ 3.) "Although Safeway advertises a 'Thru' date to motivate consumers to buy wine that they think is being sold at a time limited discount, at the end of each time-limited promotion, Safeway just renews the promotion to keep the Safeway Rewards member price at the purportedly temporary 'discount' price." (*Id.* ¶ 4.) Safeway's practice is deceptive because "[c]onsumers are more likely to buy a product, and buy more of it, if they believe the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount." (*Id.* ¶ 38.)

**A.      Michael Tempest**

Michael Tempest is a Safeway Rewards member who around April 13, 2024, "purchased six bottles of Carmenet Reserve Chardonnay Wine from a Safeway in Marin County, California." (*Id.* ¶¶ 40-41.) "Before making his purchases, Mr. Tempest observed a store label," which "displayed a reference price of $13.99" and a "tag advertising that the Carmenet Reserve Chardonnay Wine would be available at a reduced 'Member Price!' of approximately $6.38 per bottle, including a further discount for buying six bottles, 'Thru' a specific date." (*Id.* ¶ 41.) "[R]elying on the representation that the 'discounted' price would only be available temporarily, 'Thru' a date certain," Mr. Tempest bought six bottles. (*Id.*) "That representation was false as the 'Thru' date does not represent an actual end date of Safeway's purported time-limited sale." (*Id.* ¶ 42.) Later in 2024, Mr. Tempest returned to "his usual Safeway store in Marin County, California" and "observed that the Carmenet Reserve [Chardonnay] was now being sold at a supposed reference price of $14.99, and a 'Member Price!' of $8.99 (or $8.09 for buying six bottles), supposedly 'Thru' January 5, 2025. The 'Thru' date that Mr. Tempest had observed on [] or around April 13, 2024 was plainly false as the wine had not returned to the advertised $13.99 reference price and was instead still being offered at a similar discount." (*Id.* ¶ 44.) "Mr. Tempest

would not have purchased individual bottles of wine if he had known that he was not receiving time-limited savings off a former price, as he was led to believe, or he would not have purchased it on the same terms or the same price." (*Id.* ¶ 47.) But "Mr. Tempest would buy member-priced wine from Safeway in the future, if Mr. Tempest could trust that the advertised discounts were actual time-limited markdowns from true reference prices." (*Id.* ¶ 48.)

### B. Kerry McCarty

Kerry McCarty is a Safeway Rewards member. (*Id.* ¶ 50.) Around January 22, 2024; January 26, 2024; February 20, 2024; February 25, 2024; August 30, 2024; September 26, 2024; and October 22, 2024, Ms. McCarty purchased a bottle of "Josh Cellars Chardonnay Wine from a Safeway in Oregon" after observing a store label displaying a reference price of $19.99 and tags advertising a "reduced 'Member Price!'" of $13.99, $13.99, $12.99, $14.99, $12.99, $13.99, and $13.99, respectively, available "'Thru' a specific date." (*Id.* ¶¶ 52, 54-56, 64-66.) Ms. McCarty purchased several other bottles of wine based on similar representations. (*Id.* ¶¶ 57, 58, 59, 60, 61, 62, 63, 67.) In purchasing each of these bottles, Ms. McCarthy "relied on a higher price affixed to the store shelf with a bright flyer beneath that advertised a time-limited temporary sale price on individual bottles of wine . . . , including the 'Thru' date that she reasonably believed signified the end of the discount and on which she relied in making her purchases." (*Id.* ¶ 68.) "For example, each time Ms. McCarthy bought Josh Cellars Chardonnay, it was advertised using a reference price of $19.99, but in none of her purchases . . . was the chardonnay offered to Rewards Members using their membership cards at that price," making "[t]he 'Thru' dates visible on the tags [] meaningless." (*Id.* ¶ 70.)

### C. Hillary Beam

Hillary Beam is a Safeway Rewards member. (*Id.* ¶ 73.) In spring 2024, Ms. Beam "purchased a bottle of Firefly Ridge Cabernet Sauvignon wine from a Safeway in Oregon" based on a store label stating a "reference price of $11.99" and a "tag advertising that the wine would be available at a reduced 'Member Price' of $6.88 per bottle, 'Thru' a specific date." (*Id.* ¶ 76.) Throughout spring 2024, at "a Safeway in Oregon," Ms. Beam purchased Quail Oak Cabernet Sauvignon wine, Head Snapper wine, Quail Oak Merlot wine, and Firefly Red Blend wine in

reliance on similar tags advertising a reduced Member Price 'Thru' a specific date. (*Id.* ¶¶ 77-80.) "In each of these instances, Safeway's 'Thru' date representations were false." (*Id.* ¶ 81.)

### D.    Christopher Lundt

Christopher Lundt is a Safeway Rewards member. (*Id.* ¶ 86.) Around September 20, 2024 and January 3, 2025, Mr. Lundt "purchased a bottle of Lamarca Prosecco Wine from a Safeway store in Washington, D.C." based on a label displaying a reference price of $24.27 and a "tag advertising that the wine would be available at a reduced 'Member Price!' of $16.99 per bottle, 'Thru' a specific date." (*Id.* ¶¶ 87-88.) Mr. Lundt purchased Mionetto Prestige Prosecco Brut Wine and Butter Chardonnay Wine "from a Safeway store in Washington, D.C." around January 6, 2025 and January 9, 2025, based on similar labels and tags. (*Id.* ¶¶ 89-90.) "In each of these instances, Safeway's 'Thru' date representations were false." (*Id.* ¶ 92.) "For example, between at least August 8, 2024 and March 3, 2025, Safeway never sold Lamarca Prosecco, which Mr. Lundt purchased on numerous occasions, at the advertised reference price of $24.27. Instead, each time the 'Thru' date passed, Safeway would either renew its purported 'discount' of $16.99 per bottle (which lasted between at least August 8, 2024 and January 22, 2025) or offer a slightly altered discount, but never the advertised reference price." (*Id.* ¶ 93.)

## II.    PROCEDURAL HISTORY

Plaintiffs sued Safeway in September 2024. (Dkt. No. 1.) After Safeway moved to dismiss Plaintiffs' complaint, the Court granted the parties' stipulation to Plaintiffs' filing a new complaint. (Dkt. Nos. 22, 26.) Plaintiffs filed an amended complaint, and then a Second Amended Complaint, which Safeway moved to dismiss. (Dkt. Nos. 27, 30, 32.) The Court granted Safeway's motion to dismiss with leave to amend because "Plaintiffs' claims are all grounded in Defendant's alleged course of fraudulent conduct and therefore subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard," but "Plaintiffs have failed to plausibly plead the claims with particularity as required under Rule 9(b)." (Dkt. No. 57 at 1.) In the operative Third Amended Complaint, on behalf of a putative nationwide class and California, Oregon, and D.C. subclasses, Plaintiffs allege violations of: (1) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; (2) California's Unfair Competition Law

4

("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (3) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1760 et seq.; (4) Oregon's Unlawful Trade Practices Act ("OUTPA"), O.R.S. 646.605 et seq.; and (5) the District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 et seq; as well as (6) unjust enrichment. (Dkt. No. 60 ¶¶ 101, 110-192.) Now pending before the Court is Safeway's motion to dismiss Plaintiffs' Third Amended Complaint. (Dkt. No. 75.)

**DISCUSSION**

**I.    REASONABLE CONSUMER STANDARD**

Plaintiffs' claims are governed by the "reasonable consumer" test, so Plaintiffs must plausibly allege "members of the public are likely to be deceived." *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (quotation marks and citation omitted) (applying test to UCL, FAL, and CLRA claims); *see also Whiting v. AARP*, 637 F.3d 355, 363 (D.C. Cir. 2011) (explaining a CPPA claim "is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer" (quotation marks and citation omitted)); *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 135 n.26 (2015) (explaining a OUTPA misrepresentation claim "is determined based on an objective standard of what a reasonable consumer would understand the representation to be"). However, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the pleadings stage]." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007)). So, dismissal at the pleadings stage is not appropriate unless "the advertisement itself makes it impossible for the plaintiff to prove that a reasonable consumer is likely to be deceived." *See Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) (explaining dismissals of UCL, FAL, and CLRA claims at the pleadings stage are rare).

Plaintiffs' complaint alleges the tags advertising a members sale "Thru" a particular date "misrepresents" the "'discounted' price is only available for a brief window, after which the wine will be sold at the non-discounted price," when in fact the wine is "never sold to members using their membership cards at the non-discounted price." (Dkt. No. 60 ¶ 2.) According to Safeway,

no reasonable consumer would interpret the "Thru" date in this way because the "tags say *nothing* about what happens after the 'Thru' date." (Dkt. No. 75 at 18.) But drawing inferences in Plaintiffs' favor, a reasonable consumer could interpret the statement a sale exists through a particular date means the sale will not continue past that date. *Cf. Seegert v. Luxottica Retail N. Am., Inc.*, No. 17-CV-1372 JM (BLM), 2018 WL 1214888, at *4 (S.D. Cal. Feb. 23, 2018) (dismissing the plaintiff's complaint because he did not allege the defendants' discount was "temporally conditioned").

Given Plaintiffs' theory of deception, the cases Safeway cites are not persuasive. Because Plaintiffs allege the "Thru" date paired with the reference price, rather than the non-members' "reference" price itself, is misleading, the reference price cases are not analogous. *See Purcelley v. Ekster Inc.*, No. 2:23-CV-07908-WLH-JC, 2024 WL 2107710, at *5 (C.D. Cal. Apr. 4, 2024) (explaining the plaintiff had not plausibly alleged the reference price was misleading because the plaintiff had not plausibly alleged the defendant and other sellers never offered the product at that reference price); *Carvalho v. HP, Inc.*, No. 21-CV-08015-BLF, 2022 WL 2290595, at *4 (N.D. Cal. June 24, 2022) (explaining the plaintiff had not plausibly alleged the reference prices "do not accurately reflect prevailing market prices" (cleaned up)). And cases holding no reasonable consumer could interpret a promise of service "up to" a particular quality to promise service at that maximum quality specifically interpreted that language, which differs from the "Thru" dates in Safeway's tags. *See Millam v. Energizer Brands, LLC*, No. 23-55192, 2024 WL 2988210, at *1 (9th Cir. June 14, 2024); *Maloney v. Verizon Internet Servs., Inc.*, 413 F. App'x 997, 999 (9th Cir. 2011).

Because, drawing inferences in Plaintiffs' favor, a reasonable consumer could plausibly interpret the Members' sale "Thru" dates to mean that the sale would only last "Thru" that date, the Court does grant Safeway's motion to dismiss on this ground.

## II.      RULE 9(B)

Because all Plaintiffs' claims sound in fraud, they must meet Federal Rule of Civil

Procedure 9(b)'s heightened pleading standard.[2]  To determine whether a claim sounding in fraud satisfies Rule 9(b), a district court considers whether the complaint alleges "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (cleaned up).  Rule 9(b)'s particularity requirement exists "to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (cleaned up).  For this reason, "Rule 9(b) 'may be relaxed as to matters within the opposing party's knowledge.'" *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)).

The Court previously held Plaintiffs' Second Amended Complaint had not satisfied Rule 9(b) because it did not allege with particularity when and where Plaintiffs purchased what wine, what the price tags they relied on said, and how those price tags misled them. (Dkt. No. 57 at 9-10.)  Plaintiffs now each allege their approximate date of purchase, the exact wine they purchased, and the listed non-member and member prices "Thru" a particular date.  However, Safeway renews its argument Plaintiff's complaint does not satisfy Rule 9(b) because Plaintiffs do not allege the "where" and "what" of Safeway's alleged misleading statements, and Ms. Beam does not allege the "when" of those statements, with sufficient particularity.

But as to the "where," Plaintiffs' allegations they purchased wine at Safeway stores in

---

[2] The Court previously ruled Rule 9(b) applies to all Plaintiffs' claims. (Dkt. No. 57 at 5-8.) Plaintiffs concede Rule 9(b) applies to their California claims but argue "Rule 9(b) does not apply to allegations under the OUTPA or the CPPA . . . to preserve [this argument] for any future appeal." (Dkt. No. 79 at 13.)  For the reasons explained in the Court's prior Order, because "Plaintiffs' [OUTPA] claim sounds in fraud, [it] is subject to Rule 9(b)'s heighted pleading standard," and Plaintiffs' reliance on *Silva v. Unique Beverage Co., LLC*, No. 3:17-CV-00391-HZ, 2017 WL 2642286 (D. Or. June 15, 2017), is not persuasive. (Dkt. No. 57 at 5-7.)  The same is true of Plaintiffs' CPPA claims. (*Id.* at 7-8.)  Furthermore, Plaintiffs' new reliance on the language in *Hardnett v. Select Portfolio Servicing, Inc.*, 800 F. Supp. 3d 27, 37 n.4 (D.D.C. 2025), and *Goddard v. City Univ. of Seattle*, No. 25-CV-1881 (JMC), 2026 WL 632484, at *6 n.7 (D.D.C. Mar. 6, 2026), which quote *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 236, 267 (D.D.C. 2015), and *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1073 n.20 (D.C. 2008), is not persuasive for the same reasons the Court previously found *Campbell* and *Fort Lincoln* not persuasive. (Dkt. No. 57 at 8.)

Marin County, California, (Dkt. No. 60 ¶¶ 40-41); Oregon, (*id.* ¶¶ 52, 54-56, 64-66, 76-80); and Washington, D.C., (*id.* ¶¶ 87-90), contain the same amount of particularity as allegations the Ninth Circuit has considered sufficient under Rule 9(b). *See Rubenstein*, 687 F. App'x at 567 (holding sufficient a plaintiff's allegations "she purchased products with the Compared To price tags in a Last Call store in Camarillo, California (the 'Where'), on July 21, 2014 (the 'When')"); *Nunez v. Saks Inc.*, 771 F. App'x 401, 403 (9th Cir. 2019) (holding sufficient the plaintiff's allegation he "purchased a pair of Saks Fifth Avenue branded shoes at an Off Fifth store in San Diego, California (the Where) on July 15, 2015 (the When)"); *see also Safransky v. Fossil Grp., Inc.*, No. 17-CV-1865-MMA (NLS), 2018 WL 1726620, at *10 (S.D. Cal. Apr. 9, 2018) (holding sufficient the plaintiff's allegations he "purchased a Travis Workbag, Style SBG1136200 at a Fossil Outlet Store in Carlsbad, California (the 'where')"). So, Plaintiffs' allegations as to the "where" of Safeway's alleged misconduct satisfy Rule 9(b).

As to the "what," Plaintiffs allege the tags indicating the listed member price would last "Thru" a specific date, when that date "does not represent an actual end date of Safeway's purported time-limited sale." (Dkt. No. 60 ¶ 42.) Because Plaintiffs' allegations are "specific enough to give defendants notice of the particular misconduct" alleged—namely, misleadingly representing member discounts as time-limited—they satisfy Rule 9(b). *See Kearns*, 567 F.3d at 1124 ("Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." (cleaned up)). For that reason, in reference price cases, the Ninth Circuit has considered sufficient allegations of a misleading comparison price without requiring the plaintiffs to specifically allege the listed prices. *See, e.g.*, *Rubenstein*, 687 F. App'x at 567 (considering sufficient the allegation "Compared To price tags (the 'What') misled customers into believing that the Compared To prices were charged by either Neiman Marcus or other merchants in the vicinity for comparable products (the 'How')"); *Nunez*, 771 F. App'x at 403 (considering sufficient the allegation "price tags for Saks Fifth Avenue branded clothing (the What) . . . include a fictious 'Market Price' alongside a 'You Pay' price at which the product is sold, but the products are never in fact offered for sale or sold at the 'Market

United States District Court
Northern District of California

Price' (the How)"). So, Plaintiffs' allegations as to "what" misleading statements Safeway made satisfy Rule 9(b).

Safeway also argues Plaintiffs have not alleged the "when" of Ms. Beam's claims with sufficient particularity because she alleges she purchased particular bottles of wine from a Safeway in Oregon in the spring of 2024, rather than on particular dates. (Dkt. No. 60 ¶¶ 76-80.) But Safeway cites no case in which a court has dismissed a complaint for alleging a season, rather than an exact date. *Cf. Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988) (considering insufficient allegations in which "no specifics of time, place, or nature of the alleged communications are pleaded"); *Jefferson v. Collins*, 905 F. Supp. 2d 269, 290 (D.D.C. 2012) (considering insufficient allegations the defendants "'misrepresent[ed] that [they] were approved or accredited members of the Better Business Bureau and the National Kitchen and Bath Association'" without alleging "when and where this statement was made"); *see also In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1100 (C.D. Cal. 2012) (considering sufficient allegations the misrepresentation "appeared on product labeling and in marketing of the products throughout the class period" because "[g]iven this level of detail, the court does not believe that requiring that plaintiffs allege specific dates on which they saw the representations is necessary or realistic"). So, Ms. Beam's allegation she purchased particular types of wine at a Safeway store in Oregon in the spring of 2024 satisfies Rule 9(b).

Ultimately, although Safeway contends more specificity is required, it does not argue it lacks "notice of the particular misconduct" alleged or cannot "defend against the charge" or "prepare an adequate answer from the allegations." *See Kearns*, 567 F.3d at 1124 (cleaned up); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (citation omitted). And the details of Plaintiffs' purchase history, which Safeway submitted with its motion to compel arbitration, would undermine such an argument. (Dkt. No. 33-2 ¶¶ 24-30.) *Cf. Rubenstein*, 687 F. App'x at 567 ("Rule 9(b) may be relaxed as to matters within the opposing party's knowledge." (cleaned up)). So, because Plaintiffs' allegations are sufficient to put Safeway on notice of the particular misconduct alleged, the Court does not dismiss their Third Amended Complaint under Rule 9(b).

United States District Court
Northern District of California

## III. OUTPA CLAIM

OUTPA "was enacted as a comprehensive statute for the protection of consumers from unlawful trade practices." *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 21 (2015) (citation omitted). To prove an OUTPA claim, plaintiffs must allege: "(1) that [the defendant committed an unlawful trade practice under ORS 646.608; (2) that plaintiffs and the class members suffered an ascertainable loss of money or property; and (3) that the loss was caused by the unlawful trade practice." *Bohr v. Tillamook Cnty. Creamery Ass'n*, 373 Or. 343, 358 (2025) (citing *Pearson*, 358 Or. at 127).

Safeway moves to dismiss Plaintiffs' OUTPA claim based on only the first prong; specifically, Safeway argues because its "Member and non-Member prices are *not* a former price comparison, the statutes and regulation they invoke are inapplicable and do not support any claim." (Dkt. No. 75 at 21.) Plaintiffs invoke (1) section 646.608(1)(j), which proscribes "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions," Or. Rev. Stat. § 646.608(1)(j); (2) section 646.608(1)(s), which proscribes "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services," Or. Rev. Stat. § 646.608(1)(s); and (3) section 646.608(1)(u), which proscribes "any other unfair or deceptive conduct in trade or commerce," if the conduct is declared unfair or deceptive by an Attorney General's rule, Or. Rev. Stat. § 646.608(1)(u), (4). For their section 646.608(1)(u) claim, Plaintiffs cite Oregon Administrative Rule § 137-020-0010(6)(b), which provides, "[a] person engages in conduct which unfair or deceptive in trade or commerce when it represents that goods are available for sale or lease by it at an offering price less than a reference price unless such reference price . . . is the price at which the person will offer the same or similar goods for sale in the future." Or. Admin. R. § 137-020-0010(6)(b).

According to Safeway, each of these predicate provisions is inapplicable because "Safeway's Member and non-Member prices are not reference prices"; instead, they are prices "made available to different customers based on their membership status." (Dkt. No. 75 at 21; *see also id.* (arguing the predicates do not apply because "Safeway expressly and accurately represents the 'reason for' the Member Price on the yellow price tag: the reason is *Membership*").) That is an

inference that can be drawn from the allegations. But another plausible inference is that Safeway's advertising of Member prices as existing only "Thru" a specified date falsely implies after that specified date, that Member price will no longer be available and Members may need to pay the listed non-Member price, even though Safeway "will never offer the individual bottles of wine to Rewards members at the original reference prices." (Dkt. No. 60 ¶¶ 164-165.) Plaintiffs therefore allege Safeway's representation of a time-limited sale is a "false or misleading representation of fact concerning the . . . existence of . . . price reductions." Or. Rev. Stat. § 646.608(1)(j); *see also McCarrell v. RugsUSA, LLC*, No. 3:25-CV-00454-AB, 2025 WL 2256278, at *5 (D. Or. Aug. 7, 2025) (holding allegations "[b]y advertising regular list prices and supposedly time-limited discounts, Defendant's website creates an illusion that consumers are receiving a time-limited discount if they buy now" sufficient to state a claim under section 646.608(1)(j) because "Defendant represents that its sales are only available for a limited time when they are indefinite"); *Clark v. Eddie Bauer LLC*, 371 Or. 177, 194 (2023) (affirming OUTPA claim can exist based on the "purchase price theory," that "one person has been induced by another person's unlawful activities to pay money for something that the first person would not otherwise have bought"). Because Plaintiffs allege the "Thru" label misrepresents facts regarding the existence of a price reduction and regarding the offering price, Plaintiffs plausibly allege Safeway's practice violates section 646.608.

So, the Court does not grant Safeway's motion to dismiss Plaintiffs' OUTPA claim.

## IV. UNJUST ENRICHMENT CLAIM

Safeway also moves to dismiss Plaintiffs' unjust enrichment claims because they do not plausibly allege a contract's voidability. Plaintiffs do not "argue against the dismissal of their claims for unjust enrichment." (Dkt. No. 79 at 11 n.1.) So, the Court grants Safeway's motion to dismiss Plaintiffs' unjust enrichment claim.

## V. EQUITABLE JURISDICTION

Unlike state courts, federal courts must have equitable jurisdiction to hear the merits of an equitable claim. *See Guzman v. Polaris Indus., Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022). Federal courts have equitable jurisdiction only when a plaintiff has no adequate legal remedy based on the

same harm.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843-44 (9th Cir. 2020).

In response to Safeway's motion to dismiss Plaintiffs' equitable relief claims, Plaintiffs contend only Mr. Tempest is seeking equitable relief, and that he is "seeking only injunctive relief under California law." (Dkt. No. 79 at 10, 27 & n.6.)  So, the Court dismisses Plaintiffs' claims for equitable relief other than Mr. Tempest's claims for injunctive relief under California law.  Mr. Tempest specifically seeks, pursuant to his FAL, UCL, and CLRA claims, "a permanent public injunction preventing Safeway from continuing to make untrue and misleading statements in its advertising." (Dkt. No. 60 ¶¶ 121, 135, 149.)

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), held a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Id.* at 844.  In the section of their complaint alleging the lack of adequate legal remedies, Plaintiffs allege "[l]egal remedies . . . are not equally prompt and certain and in other ways efficient as equitable relief." (Dkt. No. 60 ¶ 98.)  Mr. Tempest also alleges he "would not have purchased individual bottles of wine if he had known that he was not receiving time-limited savings off a former price, as he was led to believe, or he would not have purchased it on the same terms or the same price," but he "would buy member-priced wine from Safeway in the future, if Mr. Tempest could trust that the advertised discounts were actual time-limited markdowns from true reference prices." (*Id.* ¶¶ 47-48.)  Because Plaintiffs have not amended these allegations since their Second Amended Complaint, as the Court previously held, these facts sufficiently allege Mr. Tempest's Article III standing to seek injunctive relief.  (Dkt. No. 57 at 15-16.)  *See Davidson*, 889 F.3d at 969-70 (holding in the false advertising context, "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to").

By alleging legal remedies are inadequate and plausibly alleging a threat of future harm, Plaintiff alleges facts supporting a reasonable inference that damages would not remedy such future harm, making legal remedies inadequate.  *See Flodin v. Cent. Garden & Pet Co.*, No. 21-CV-01631-JST, 2022 WL 20299955, at *2 (N.D. Cal. Jan. 20, 2022) (denying motion to dismiss

equitable relief claims because "the Court has already concluded that Plaintiffs have adequately alleged standing to seek injunctive relief, which demonstrates that Plaintiffs have adequately pleaded that damages are insufficient to protect against future harm"); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1160 (S.D. Cal. 2021) (holding the plaintiffs had plausibly alleged the lack of adequate legal remedies because "[a]s the Court already noted in Defendant's Article III standing challenge, Plaintiffs do show future harm as to the 'non-GMO' deceptive marketing statements"); *see also Ziegler v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) (holding the plaintiff had inadequate legal remedies because while "[d]amages would compensate [the plaintiff] for his past purchases," "[a]n injunction would ensure that he (and other consumers) can rely on [the defendant's] representations in the future").

Safeway nevertheless contends Plaintiffs' allegations are insufficient. But in doing so, Safeway primarily relies on cases in which the plaintiffs had not alleged inadequate legal remedies at all. *See, e.g.*, *In re California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021) ("[N]owhere in the complaint do Plaintiffs allege that the three-fold damages they seek are inadequate."); *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) (noting the plaintiff "fails to allege or demonstrate that any remedy at law is inadequate"); *see also Philips v. Ford Motor Co.*, 726 F. App'x 608, 609 (9th Cir. 2018) ("Appellants do not challenge the district court's holding that their complaint failed to plausibly state the inadequacy of their legal remedies, so they have waived any argument that they alleged sufficient facts to plausibly establish the inadequacy of their legal remedies."). *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020), is also distinguishable because the plaintiffs there had not plausibly alleged a threat of future harm. *See id.* at *3 (considering insufficient the plaintiffs' allegations "because Apple's repair program is deficient, their alleged injury is 'continuing'"). Ultimately, as the Court's prior order explained, Plaintiffs need not allege much at the motion to dismiss stage. (Dkt. No. 57 at 17.) *See Weizman v. Talkspace, Inc.*, 705 F. Supp. 3d 984, 990 n.3 (N.D. Cal. Dec. 6, 2023) (a plaintiff "need not explain in great detail why her legal remedies are insufficient; an allegation to that effect is generally enough"); *see also Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1129

13

(N.D. Cal. 2023) ("Plaintiffs alleged that legal remedies were not as certain as equitable remedies. That is sufficient." (citations omitted)).

So, given Plaintiffs allege legal remedies are inadequate and have plausibly alleged Mr. Tempest faces a threat of future harm, the Court does not grant Safeway's motion to dismiss Mr. Tempest's injunctive relief claims under California law. However, the Court otherwise grants Safeway's motion to dismiss Plaintiffs' equitable relief claims because Plaintiffs do not oppose dismissal.

**CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Safeway's motion to dismiss. Specifically, the Court grants Safeway's motion to dismiss Plaintiffs' unjust enrichment claim and requests for equitable relief, except for Mr. Tempest's claims for injunctive relief under California law. Because Plaintiffs did not oppose Safeway's motion to dismiss these claims, and they have already had three opportunities to amend their complaint to cure any deficiencies in these claims, the Court dismisses these claims without leave to amend and with prejudice. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) ("A district court may deny a plaintiff leave to amend if . . . the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." (citation omitted)). The case will proceed on Plaintiffs' remaining claims.

The Court sets an initial case management conference for **September 9, 2026 at 2:00 p.m.** via Zoom video. A joint case management statement is due one week in advance. Plaintiffs should include in that statement an explanation of how they plan to obtain class certification given their operative theory of Safeway's allegedly misleading conduct.

This Order disposes of Docket No. 75.

**IT IS SO ORDERED.**

Dated: August 4, 2026

_Jacqueline Scott Corley_
JACQUELINE SCOTT CORLEY
United States District Judge

14